JAKE BLOCK *et al.* Plaintiffs in Error, *vs.* THE CITY OF CHICAGO, Defendant in Error.

*Opinion filed February 19, 1909—Rehearing denied April 15, 1909.*

1. CONSTITUTIONAL LAW—*extent of constitutional prohibition against special or local laws.* Section 22 of article 4 of the constitution prohibits local or special laws in certain enumerated cases, but in all other classes of cases the question whether a general law can be made applicable or whether a special act shall be passed is for the legislature, and not for the courts.

2. SAME—*prohibition of constitution does not apply to ordinances within city's powers.* The prohibition of the constitution respecting special legislation does not apply to ordinances adopted by a city within the powers conferred upon it by general law, and while an ordinance which deprives a party of a right guaranteed by the constitution is void, yet the mere fact that an ordinance is special and applies to a certain business does not necessarily render it invalid.

3. SAME—*when an ordinance is not special.* An ordinance requiring all persons engaged in the business of exhibiting moving pictures to obtain a permit, and providing that the chief of police shall not issue a permit for the exhibition of immoral or obscene pictures, is not special or discriminating because it makes no reference to the business of exhibiting stationary pictures by stereopticons or other similar device.

4. SAME—*city has power to regulate the moving picture business.* Clause 45 of section 1 of article 5 of the City and Village act expressly authorizes the passage of an ordinance to prohibit the exhibition of immoral or obscene pictures, and the fact that the ordinance applies only to moving pictures and does not prohibit the exhibition of stationary ones does not amount to a sanction of the exhibition of stationary pictures which are immoral or obscene, nor furnish ground for a claim of discrimination against the moving picture business.

5. SAME—*an ordinance passed under express power cannot be held void for unreasonableness.* Where an ordinance is passed in pursuance of an express power to pass an ordinance of a particular character, the courts cannot set aside such ordinance because they deem it unreasonable.

6. SAME—*what does not render moving picture ordinance invalid.* The fact that an ordinance which requires exhibiters of moving pictures to first exhibit them to the chief of police does not require that scenes enacted on the stage of theaters be first enacted before the chief of police does not render the ordinance invalid, even though some of the moving pictures are reproductions of the scenes enacted in the theaters.

7. SAME—*what is not a delegation of legislative power.* While a legislative body cannot divest itself of its proper function of determining what the law shall be, yet it may authorize others to do things which it might properly, but cannot understandingly or advantageously, do.

8. SAME—*ordinance not invalid because chief of police is to determine whether pictures are obscene or immoral.* An ordinance prohibiting the exhibition of moving pictures which are obscene and immoral is not invalid because it leaves to the chief of police, in the first instance, the determination of the question whether such pictures are obscene and immoral.

9. SAME—*ordinance prohibiting exhibition of "immoral or obscene" pictures fixes a sufficient standard.* An ordinance prohibiting the exhibition of "immoral or obscene" pictures is not invalid because it fixes no other standard for the determination by the chief of police of the character of the pictures, where there is nothing in the ordinance to prevent resort to the courts to compel the chief of police to issue a permit to exhibit a picture which is not, in fact, obscene or immoral.

10. PICTURES—*a picture may be immoral although it illustrates scenes connected with history.* Moving pictures which portray crime are immoral even though they illustrate experiences connected with the history of the country, such as the career of the "James Boys" and the exploits of the "Night Riders."

11. SAME—*what is not depriving a person of property without due process of law.* A city has power to pass an ordinance prohibiting the exhibition of moving pictures which are immoral and obscene, and if the ordinance applies to all persons engaged in the moving picture business, the fact that such persons will be required to pay rent for the films during the time necessary for their inspection by the chief of police does not amount to depriving them of property without due process of law.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

ADLER, LEDERER & SCHOENBRUN, for plaintiffs in error:

The ordinance of the city of Chicago entitled "An ordinance prohibiting the exhibition of obscene and immoral pictures, and regulating the exhibition of pictures of the classes and kinds commonly shown in mutoscopes, kinetoscopes, cinemetographs and penny arcades," is unconstitutional because it discriminates against persons exhibiting pictures of the classes and kinds commonly shown in mutoscopes, kinetoscopes, cinemetographs and penny arcades in favor of those exhibiting stereopticons, stationary pictures and all kinds other than those shown in mutoscopes, kinetoscopes, cinemetographs and penny arcades. *Bailey* v. *People,* 190 Ill. 28; *Pierce* v. *Dillingham,* 203 id. 148; *Starne* v. *People,* 222 id. 189; *Frorer* v. *People,* 141 id. 171; *Coal Co.* v. *People,* 147 id. 66; *Ritchie* v. *People,* 155 id. 98; *Eden* v. *People,* 161 id. 296; *Manowsky* v. *Stephan,* 233 id. 409.

The ordinance is unconstitutional and void because it delegates discretionary and judicial powers to the chief of police. *Chicago* v. *Trotter,* 136 Ill. 430; *DeWitt County* v. *Clinton,* 194 id. 521; Dillon on Mun. Corp. sec. 321; *Railway Co.* v. *People,* 212 Ill. 638; *Wilder* v. *Traction Co.* 216 id. 493.

The ordinance is unconstitutional because it takes away property rights and interests without due process of law. *Bailey* v. *People,* 190 Ill. 28; *People* v. *Steele,* 231 id. 340; *Belleville* v. *Turnpike Co.* 234 id. 428; *Frorer* v. *People,* 141 id. 171; *Coal Co.* v. *People,* 147 id. 66; *Ritchie* v. *People,* 155 id. 98; *Gillespie* v. *People,* 188 id. 176; *Millett* v. *People,* 117 id. 294; *Eden* v. *People,* 161 id. 296.

The ordinance is unreasonable and oppressive. *Chicago* v. *Trotter,* 136 Ill. 430; *Hawes* v. *Chicago,* 158 id. 653; *Chicago* v. *Brown,* 205 id. 568.

EDWARD J. BRUNDAGE, Corporation Counsel, EDWIN H. CASSELS, and EMIL C. WETTEN, for defendant in error:

The ordinance in question in this case regulates the business of exhibiting moving pictures. It applies alike to all persons engaged in the moving picture business, and in the fullest sense is general in its terms and not open to the objection that it is class legislation. *Chicago* v. *Dairy Co.* 234 Ill. 294; *Gundling* v. *Chicago,* 176 id. 340; 177 U. S. 53; *Hawthorn* v. *People,* 109 Ill. 302; *Booth* v. *People,* 186 id. 43; *Christy* v. *Elliott,* 216 id. 31; *Douglas* v. *People,* 225 id. 536; *People* v. *Supervisors,* 223 id. 187; *Banta* v. *Chicago,* 172 id. 204.

The ordinance in question does not violate the constitution of Illinois or the constitution of the United States by depriving exhibiters of moving pictures of their property or property rights without due process of law. *Chicago* v. *Brownell,* 146 Ill. 64; *Launder* v. *Chicago,* 111 id. 291; *People* v. *Cregier,* 138 id. 401; *Booth* v. *People,* 186 id. 43; *Booth* v. *Illinois,* 184 U. S. 425; *Soon Hing* v. *Crowley,* 113 id. 703; *Burdick* v. *People,* 149 Ill. 600; *Gundling* v. *Chicago,* 176 id. 340; McGehee on Due Process of Law, 354.

The ordinance in question in this case does not delegate discretionary or judicial powers to the chief of police. It establishes a fixed and definite rule which the chief of police must follow in issuing licenses. *Spiegler* v. *Chicago,* 216 Ill. 114; *Arms* v. *Ayer,* 192 id. 601; *Gundling* v. *Chicago,* 176 id. 340.

Where the legislature has made a definite and specific grant of power to the municipality, and the municipality acts clearly within the terms of the power granted, courts will not examine into the question of the reasonableness of the act of the municipality unless the act, in effect, confiscates some lawful subject of private property. Dillon on Mun. Corp. (4th ed.) par. 328; *Peoria* v. *Calhoun,* 29 Ill. 317; *Skaggs* v. *Martinsville,* 140 Ind. 476; *Darlington* v.

*Ward*, 48 S. C. 570; *Kansas City* v. *Overton*, 68 Kan. 560; *District of Columbia* v. *Waggaman*, 4 Mackey, 328; *St. Paul* v. *Colter*, 12 Minn. 41; *Ex parte Chin Yan*, 60 Cal. 83; *Grierson* v. *Ontario*, 9 U. C. (Q. B.) 623.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiffs in error, Jake Block, Nathan Wolf, J. H. Ferris, B. Munstock, S. VanRonkel and A. VonRonkel, filed their bill of complaint in the superior court of Cook county against the defendant in error, city of Chicago, alleging that they were engaged in the business of operating five and ten-cent theaters in the city of Chicago, where moving pictures were displayed, and praying the court to enjoin the defendant in error from enforcing an ordinance entitled "An ordinance prohibiting the exhibition of obscene and immoral pictures and regulating the exhibition of pictures of the classes and kinds commonly shown in mutoscopes, kinetoscopes, cinemetographs and penny arcades," passed November 4, 1907, and in force November 19, 1907, and to restrain the further prosecution of a suit brought by defendant in error against said Jake Block in the municipal court of Chicago for a violation of said ordinance, and the bringing of any proceedings against any of the complainants for any alleged violation of the provisions of the said ordinance. The court sustained the demurrer of the defendant to the bill, and the complainants having elected to stand by their bill, it was dismissed for want of equity, at their costs. The ground upon which the injunction was asked for was, that the ordinance deprived the complainants of their rights under the constitution and was therefore void, and for that reason the record has been brought directly to this court for review by writ of error.

The ordinance requires those engaged in the business of exhibiting moving pictures to secure a permit for the exhibition of such pictures, and provides that the chief of

police shall not issue a permit for the exhibition of any obscene or immoral picture or series of pictures, but that he shall issue a permit, without fee or charge, for all pictures which are not obscene or immoral. The ordinance declares that it shall be unlawful for any person, firm or corporation to show or exhibit in a public place, or in a place where the public is admitted, any picture or series of pictures of the classes or kinds commonly shown in mutoscopes, kinetoscopes, cinemetographs, and such pictures or series of pictures as are commonly shown or exhibited in so-called penny arcades, and in all other automatic or moving picture devices, without first having secured a permit therefor from the chief of police. It requires the applicant for a permit to show to the chief of police the plates, films, rolls or other like apparatus by or from which the picture or series of pictures is shown or produced or the picture or series of pictures as shown or exhibited. The chief of police must either grant or deny the permit within three days after such inspection, and if the picture or series of pictures is immoral or obscene he must refuse the permit, but otherwise it is his duty to grant it without a fee or tax of any kind. If the chief of police refuses to grant a permit the applicant may appeal to the mayor, whose decision shall be final. When a permit is once granted the picture or series of pictures may be shown by any other exhibiter, provided the written permit is delivered to him and a written notice of the transfer or lease is mailed to the chief of police, and any number of transfers or leases of the same picture or series of pictures may be made under those conditions. The permit must be posted at or near the entrance to the place of exhibition, and anyone violating the terms of the ordinance is subject to a fine, not less than $50 nor more than $100, for each offense.

The material facts alleged in the bill and taken to be true for the purposes of the demurrer are as follows: The complainants are engaged in the business of operating five

and ten-cent theatres, where moving pictures are displayed
by means of moving picture machines known as mutoscopes,
kinetoscopes and cinemetographs, and have paid a license
fee for the business. The pictures are displayed upon can-
vas and are taken from plays and dramas which the bill
says are moral and in no way obscene. Among the pictures
are pictures taken from the plays known as the "James
Boys" and the "Night Riders," displaying experiences con-
nected with the history of this country. There had been,
and at the time of the display of the pictures by complain-
ants there were, certain plays and dramas being performed
in certain playhouses in the city of Chicago of which the
pictures were reproductions of parts. The films which are
used in exhibiting pictures are not owned by the exhibiters
but are rented from concerns which make a business of
renting films to complainants and others at a certain rental
per week, and if the films must first be exhibited to the
chief of police and a permit obtained it will be necessary
to rent the films for a greater length of time and for a
larger expense than otherwise. The chief of police refused
to grant a permit for the display of the pictures of the
"James Boys" and "Night Riders," and others used by the
complainants, about two hundred or three hundred in all,
without having any hearing in a court of law where the
complainants might defend their rights and property in-
terests. The defendant brought an action in the municipal
court against the complainant Jake Block for a penalty for
exhibiting the pictures known as "James Boys" without a
permit, and threatened to bring other proceedings against
Jake Block and the other complainants. There are about
two hundred persons engaged in the same business in Chi-
cago in addition to the complainants, all of whom are simi-
larly situated, and the chief of police threatens to enforce
the ordinance against all of them. At the same time per-
mits to complainants were refused for the pictures named,
some of the pictures prohibited were being shown in the

239—17

city in stereopticon views and stationary pictures. The bill alleges that the ordinance is void because it discriminates against the exhibiters of moving pictures, delegates discretionary and judicial powers to the chief of police, takes the property of complainants without due process of law, and is unreasonable and oppressive.

The purpose of the ordinance is to secure decency and morality in the moving picture business, and that purpose falls within the police power. It is designed as a precautionary measure to prevent exhibitions criminal in their nature and forbidden by the laws. Even the possession of an indecent picture is a crime under section 223 of the Criminal Code, and the offender may be confined in the county jail not more than six months or be fined not less than $100 nor more than $1000 for each offense. The ordinance applies to five and ten-cent theatres such as the complainants operate, and which, on account of the low price of admission, are frequented and patronized by a large number of children, as well as by those of limited means who do not attend the productions of plays and dramas given in the regular theatres. The audiences include those classes whose age, education and situation in life specially entitle them to protection against the evil influence of obscene and immoral representations. The welfare of society demands that every effort of municipal authorities to afford such protection shall be sustained, unless it is clear that some constitutional right is interfered with. The defendant by its charter has been invested with very extensive powers to enable it to accomplish the purpose of this ordinance. By clause 41 of article 5 it is authorized to license, tax, regulate, suppress and prohibit exhibitions, shows and amusements. Clause 45 gives power to prohibit the sale or exhibition of obscene or immoral publications, prints, pictures or illustrations, and clause 58 authorizes the defendant to regulate places of amusement. The legislature have thereby given to the defendant power to use every legitimate means for prohibit-

ing and preventing the exhibition of obscene or immoral pictures, but it is argued that in doing so they have interfered with constitutional rights by requiring a permit for moving pictures while none is required for stereopticon or other stationary pictures. No fee, tax or other burden is laid upon the exhibiter of moving pictures, and the permit must be issued if the picture or series of pictures is not immoral or obscene.

Counsel argue the question as though exhibiters of stereopticon or other stationary pictures are authorized by the ordinance to exhibit immoral or obscene pictures while the complainants are prohibited from doing so. That is a false notion, and is of the same character as the argument advanced in *City of Chicago* v. *Brownell*, 146 Ill. 64. It was there claimed that the ordinance prohibiting book making and pool selling except within the enclosures of fair and race track associations during the actual time of the meetings of said associations or within twenty-four hours before any such meetings was void, as authorizing book making or pool selling in the excepted places at the times mentioned. The court said that the ordinance did nothing of the kind, but simply made no provision for the punishment of those who might do the specified acts within the enclosures at certain times. Attention was called to the radical and fundamental distinction between a failure to provide punishment for an act and the sanction of it, and it is clear that the ordinance in this case does not authorize or sanction the exhibition of obscene or immoral pictures in stereopticon or other stationary pictures, which the statute of the State has made criminal. If this ordinance did not exist, neither the complainants nor other exhibiters of pictures would have any right to exhibit obscene pictures, either moving or stationary. If the pictures for which the chief of police refused permits were immoral or obscene, it is no ground of objection to the ordinance that other persons

were violating the law by other means or that the ordinance does not provide for the punishment of such other persons.

Another supposed discrimination is based on the allegation that some of the same scenes displayed by moving pictures are shown in theatres where the scenes are enacted upon the stage and there is no requirement that the show shall be given before the chief of police and a permit obtained. Clause 45 of article 5 of the city charter, which empowers the defendant to prohibit the exhibition of obscene or immoral pictures, has no reference to theatres. Their business is not the exhibition of pictures. It cannot therefore be said that the exercise of the power conferred by clause 45 is unreasonable because it does not include the theatre. Where an ordinance is passed in pursuance of an express power to pass an ordinance of that character, it can not be set aside by the courts because they may deem it unreasonable. (*City of Peoria* v. *Calhoun,* 29 Ill. 317; Dillon on Mun. Corp. sec. 262.) Unless the legislature had no power to confer upon the city the authority contained in clause 45 without including theatres, for the reason that the power delegated would be in conflict with the constitution, the objection now under consideration could not be sustained. The constitution contains a prohibition against local and special laws in certain classes enumerated in section 22 of article 4, but there is no other prohibition which can be enforced by the courts. In all other classes of cases the question whether a general law can be made applicable or whether a special one shall be passed is for the legislature. (*Knopf* v. *People,* 185 Ill. 20.) Under the constitution the legislature cannot pass any special law incorporating a city or amending its charter, but clause 45 is general and applies to every city incorporated under the act, and the prohibition of the constitution does not apply to ordinances that may be adopted by a city within the powers conferred upon it. (*People* v. *Cooper,* 83 Ill. 585.) It is true that an ordinance which deprives a party of a right guaranteed

by the constitution is null and void, but the complainants were bound to point out such a provision to authorize the court to restrain the city from the enforcement of the ordinance. To say that an ordinance is special and applies only to a certain business or to persons engaged in a certain line of business does not condemn it.

The ordinance, however, is not special and contains no discrimination against persons of the same class or engaged in the same business. It applies alike to all persons engaged in the moving picture business, which the bill itself shows to be a separate and well established branch of the amusement business. There is good ground for regulations concerning that business, which is different from the business of exhibiting pictures by stereopticons or other similar methods. As to the stereopticon and other similar pictures, there is no allegation in the bill that any business of that kind is carried on, and so far as appears it may be a mere incident of lectures, church entertainments or amateur performances; but if it is a business, the places where it is conducted may be inspected to ascertain whether there is any violation of law, while in the case of moving pictures, rented and passed from one exhibiter to another about the city and constantly changing, it would require the constant attendance of a great force of policemen at the various exhibitions in the two hundred places mentioned in the bill. There is also a radical difference between the burden imposed by the exhibition of films and pictures to be exhibited in the moving picture show and a requirement that a large number of actors shall go through a dramatic performance before the chief of police. The one is but a trifling inconvenience, while the other would verge upon the ridiculous and entail great and unnecessary expense. To hold that a city, in executing the power conferred upon it to suppress and prohibit things which are hurtful to the morals of the people, must pursue the course insisted upon by counsel would be to practically prevent the execution of the power

at all. The ordinance embraces all persons similarly situated and contains no discrimination as between them. (*City of Chicago* v. *Bowman Dairy Co.* 234 Ill. 294; *Hawthorn* v. *People,* 109 id. 302.) In *Gundling* v. *City of Chicago,* 176 Ill. 340, the fact that young persons of weak and immature minds are more liable to use tobacco in the form of cigarettes than in any other form was considered sufficient to authorize the city to single out, regulate· and license the sale of tobacco in that form without including any other form of tobacco. There. is at least equal reason for singling out and regulating the five and ten-cent theatres, attended in great numbers by children, without including other theatres and other forms of public entertainment.

It is also argued that the ordinance is void because it delegates legislative and judicial powers to the chief of police by giving him the power to determine whether a picture or series of pictures is immoral or obscene, and not giving to the applicant for a permit a day in court for the determination of the question whether the picture or series of pictures is immoral or obscene. It is true that a legislative body cannot divest itself of its proper function to determine what the law shall be, but it may authorize others to do those things which it might properly but cannot understandingly or advantageously do. That rule was stated as long ago as the case of *People* v. *Reynolds,* 5 Gilm. 1, where it was said that without that power legislation would become oppressive and yet imbecile, and that local laws, almost universally, call into action to a greater or less extent the agency and discretion either of the people or individuals to accomplish in detail what is authorized or required in general terms. Government could not be carried on if nothing could be left to the judgment and discretion of administrative officers, and the doctrine of that case has been steadily adhered to ever since. Discretion may be reserved to the officer charged with the duty of issuing dram-shop licenses to determine the number to be

granted and the location; (*People* v. *Cregier*, 138 Ill. 401;) and a reasonable discretion may be exercised by such officer, whether it is reserved to him by the ordinance or not. (*Harrison* v. *People*, 222 Ill. 150.) An act giving discretion to an inspector as to the number, location, material and construction of fire escapes is not unconstitutional, as delegating legislative or judicial power. (*Arms* v. *Ayer*, 192 Ill. 601.) Neither is an ordinance in violation of the constitution which gives to the commissioner of public works authority to approve a device to prevent the spilling of oil on the streets. (*Spiegler* v. *City of Chicago*, 216 Ill. 114.) It has never been questioned that power may be delegated to officers to determine facts, such as whether animals are diseased so as to exclude them from importation; whether meat or food is found upon an inspection to be unhealthy or diseased; whether an assemblage amounts to a riot to be dispersed. There are numerous facts of that kind which must be left to administrative officers, and the ordinance is not invalid because the chief of police must determine the question of fact whether a picture or series of pictures is immoral or obscene.

But it is said that, conceding the power of the legislative body to authorize an administrative officer to determine the question, the ordinance fixes no standard by which it is to be determined. Manifestly it would be impossible to specify in an ordinance every picture or particular variety of picture which would be considered immoral or obscene, and no definition could be formulated which would afford a better standard than the words of the ordinance. It is doubtless true, as said by counsel, that there are people who differ upon the subject, as to what is immoral or obscene. There are the shameless and unclean, to whom nothing is defilement and from whose point of view no picture would be considered immoral or obscene. Perhaps others could be found, with no laxity of morals, who pay homage to art and would not regard anything as indelicate

or indecent which had artistic merit, and would look upon any person entertaining different sentiments as of inferior intelligence, without proper training on the subject and blinded with bigotry. Both classes are exceptional, and the average person of healthy and wholesome mind knows well enough what the words "immoral" and "obscene" mean and can intelligently apply the test to any picture presented to him. There is as great diversity of opinion as to what constitutes good moral character, but it is beyond question that an officer authorized to grant a license to keep a dramshop may determine whether the applicant has a good moral character, and there has been no ground for complaint that the power has been wrongfully or oppressively exercised against applicants. It is presumed that the chief of police, or the mayor, in case of an appeal to him, will perform his duty with reasonable intelligence and in accordance with the generally accepted meaning of the words. If there should be an abuse of power on the part of either the chief of police or the mayor, the ordinance does not prevent an application to a court to compel either officer to perform his duty and issue a permit for a picture which is not immoral or obscene.

It is further argued that the ordinance deprives complainants of their property without due process of law. Defendant has a right to prohibit the exhibition of immoral or obscene pictures, and the complainants would not be deprived of any right if they are prevented from exhibiting pictures of that class. If the ordinance is enforced according to its terms they will not be deprived of any property or right or the use of any property which they have a legal right to use. The only thing alleged in the bill having any relation to the question is the fact that the complainants will have to pay rent for the films or pictures during the time necessary for inspection by the chief of police. There would be no greater delay than is necessary in any case where a permit must be obtained for any purpose,

and if the defendant may require the permit there is no lack of due process of law. The ordinance being general in its terms and applying to all persons engaged in the moving picture business, the complainants are not subject to any unlawful burden.

There is a further argument that some sort of a hearing is required in court to determine the fact whether a picture proposed to be exhibited, or one that has been exhibited, is immoral or obscene. We know of no decision sustaining such a doctrine and counsel do not appear to have found any. As we have already seen, there is no lawful objection to the determination of the question by the chief of police.

There is a general averment in the bill that the complainants are engaged in exhibiting moving pictures which are not immoral or obscene, but there is no averment that the pictures specifically mentioned, which are the "James Boys" and the "Night Riders," or the others for which permits were refused, were not immoral or obscene. It is true that pictures representing the career of the "James Boys" illustrate experiences connected with the history of the country, but it does not follow that they are not immoral. Pictures which attempt to exhibit that career necessarily portray exhibitions of crime, and pictures of the "Night Riders" can represent nothing but malicious mischief, arson and murder. They are both immoral and their exhibition would necessarily be attended with evil effects upon youthful spectators. If the other pictures for which permits were refused were of similar character the chief of police is to be commended for the refusal.

No wrong was done or threatened to the complainants and the bill stated no ground for equitable interference. The court did right in sustaining the demurrer and dismissing the bill.

The decree is affirmed.

*Decree affirmed.*