XYDIAS AMUSEMENT CO. et al. v. CITY OF HOUSTON et al.  (No. 7214.)

(Court of Civil Appeals of Texas. Galveston. March 24, 1916. Rehearing Denied April 6, 1916.)

1. MUNICIPAL CORPORATIONS ⬤⇒57—LEGISLATIVE CONTROL—DELEGATION OF POWER—SOURCE.

Under Const. art. 11, § 5, providing that cities of certain population may adopt or amend charters subject to legislative limitations, providing that no charter or ordinance passed thereunder shall contain any provision inconsistent with the Constitution or the general laws, delegation of powers to city councils by the Legislature is unnecessary; their power being derived directly from the sovereign people, if they act under the provision.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 144, 148; Dec. Dig. ⬤⇒57.]

2. THEATERS AND SHOWS ⬤⇒1—POLICE POWER—PUBLIC AMUSEMENTS — DELEGATION BY LEGISLATURE.

Assuming that delegation of legislative authority is prerequisite to exercise by city councils of powers over public amusements, there is sufficient delegation by Rev. St. 1911, art. 873, empowering city councils to license, tax, and regulate, or prohibit, theaters, circuses, exhibitions of common showmen, and shows of any kind, and article 874, empowering the council to authorize the proper city officer to grant and issue licenses, and to direct the manner of issuing and registering thereof, and the fees and charges to be paid therefor.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 1; Dec. Dig. ⬤⇒1.]

3. THEATERS AND SHOWS ⬤⇒1—POLICE POWERS—PUBLIC AMUSEMENTS.

Moving picture exhibitions are subject to police surveillance and control in the interest of public morals, and it is the right of the city of Houston, under its charter, § 2, providing that the city council shall have power to preserve and promote good government, order, security, peace, quiet, amusement, education, prosperity, and the general welfare of the city and its inhabitants, and section 16, providing that the city shall have power by ordinance to permit, forbid, or regulate theaters, balls, dancehouses, and other public amusements, and to suppress the same whenever the preservation of order, tranquility, public safety, or good morals may demand, and also under its police powers to regulate, permit, or forbid such exhibition and to appoint a board of censors, with reasonable authority over them.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 1; Dec. Dig. ⬤⇒1.]

4. THEATERS AND SHOWS ⬤⇒3—POLICE POWER—REGULATION OF PUBLIC AMUSEMENT — PAYMENT OF OCCUPATION TAX—EFFECT.

The mere fact that an exhibitor of motion pictures has paid the state occupation tax for such exhibition does not relieve him from compliance with the city ordinance, requiring the securing of a permit as a prerequisite to the showing of pictures.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 3; Dec. Dig. ⬤⇒3.]

5. THEATERS AND SHOWS ⬤⇒2—POLICE POWER—REGULATION OF PUBLIC AMUSEMENT.

The powers of the city council to regulate places of public amusement can be exercised only in the absence of legislative regulation, but where the Legislature by statute merely provides the penalty for showing improper pictures, the statute being silent as to censorship, and making no attempt to cover the entire field, the city may create a board of censors and require their permit to issue before exhibition.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 2; Dec. Dig. ⬤⇒2.]

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Suit for injunction by the Xydias Amusement Company and others against the City of Houston and others. From an order dissolving the temporary restraining order and denying the injunction, plaintiffs appeal. Affirmed.

A. B. Wilson and Stanley A. Beard, both of Houston, for appellants. J. C. Hutcheson, Jr., of Houston, for appellees.

LANE, J. The city council of the city of Houston passed the following ordinance:

"Sec. 37. There is hereby created a board of censors consisting of seven discreet persons, to be appointed by the mayor and approved by the council, whose duty it shall be to investigate all places of public entertainment and amusement, and to take steps to permit or to condemn and prevent the showing of any picture or pictures, vaudeville, entertainments, or the giving of any character of entertainment that is obscene, immoral, indecent or is calculated to promote or encourage racial or sectional prejudices, indecency or immorality. All of said board shall serve for a period of two years, unless sooner removed by the mayor, and until their successors have been appointed and qualified. Six of said board shall serve without compensation; one member hereof shall be designated as secretary of the board, and shall receive a salary to be

fixed by the mayor. A majority of said board shall constitute a quorum for the transaction of business; and if more than two members are absent from the city, or unable from any other cause to act, the secretary shall notify the mayor, who shall have power to appoint substitutes to serve during the absence of such members.

"It shall be the duty of the secretary, as far as possible, to visit each place where motion pictures or other entertainments are exhibited in the city of Houston each day and to examine all of said entertainments and moving picture films, and said secretary shall ascertain if any entertainment, show or motion picture is being exhibited which has been condemned by the board of censors as being obscene, indecent or immoral, or as calculated to promote or encourage racial or sectional prejudice, indecency or immorality or for which a permit has not been issued, and in case the secretary shall find any such picture being shown or entertainment given, the manager or other person in charge shall be notified to stop the exhibition of such picture or the giving of said entertainment. The secretary shall report all violations of this article to the board of censors. All moving picture shows, theaters, penny arcades, vaudeville shows and other places of public entertainment in the city of Houston are hereby required to permit said secretary and other members of the board, without charge or compensation, to enter said shows 'or places of public entertainment and to examine and inspect each and all of said motion pictures or other entertainments which are being shown or exhibited therein, and this they and each of them, shall do whenever and as often as the said secretary or said board of censors may require.

"Sec. 38. Each person, firm or corporation in charge of any place of public entertainment in the city of Houston shall apply to the board of censors, through the secretary, for a permit to show any moving picture, or series of moving pictures, vaudeville entertainment, or give any entertainment of any kind. The applicant for a permit shall file with the secretary, at least three days in advance of the time at which it is proposed to give an exhibition of moving pictures or other entertainment (unless impossible to do so), a complete program thereof, and shall furnish, when demanded, such additional information concerning said entertainment or moving picture or series of pictures, as may be required by the board of censors or secretary thereof, in such form as may be satisfactory to the secretary of said board. The secretary shall issue permits in the name of the board of censors for the exhibition of pictures or the giving of entertainments, but no permit shall be issued in the name of the board of censors upon any application for the showing of pictures or the giving of entertainments which, in the judgment of the secretary, are obscene, immoral, indecent, or which would tend to promote or encourage indecency or immorality, or racial or sectional prejudice, until such application has been presented to and passed upon by the board of censors. The board of censors shall have the right to appoint a time and place for inspecting the pictures or exhibition in question, at which time the exhibitor shall produce for inspection by the board all plates, films, rolls or other like apparatus by or from which any picture or series of pictures is shown or produced, or character of vaudeville entertainment to be given, and if required by the board shall exhibit the picture or series of pictures or entertainment to the members of the board. If a majority of the board of censors present at such inspection shall condemn said picture or other entertainment, in violation of the provisions of this ordinance, or the laws of the state of Texas, no permit therefor shall be issued by the secretary, provided, a quorum of said board shall have the power to act in all cases, and provided further, that the

board shall have the power, in the event it does not desire to condemn a picture or series of pictures or vaudeville entertainment as a whole, to order the elimination of such parts or scenes as will remove the grounds of offense against this ordinance and the laws of the state of Texas, and to issue permits conditioned upon the making of such eliminations.

"Sec. 39. The board of censors shall grant no permit for the giving of any entertainment or the showing of any picture or series of pictures which, in the opinion of the board, is obscene, indecent or immoral, or is contrary to good morals or public decency, or is calculated to promote or encourage racial or sectional prejudice, immorality or indecency; provided, that all permits granted shall be subject to revocation by the board should it be ascertained that there has been any mistake made on their part or misrepresentation or concealment of the material facts concerning the character and quality of the exhibition so permitted.

"Sec. 40. Any person who shall exhibit any picture or series of pictures, moving or otherwise, or give any entertainment, vaudeville or otherwise, for the public whether an admission fee is charged or not, without first securing a permit to do so from the board of censors, or who shall show any picture or series of pictures or entertainment of any kind for which a permit has been refused, or who shall exhibit to the public any moving pictures or entertainment permitted on condition that eliminations be made, without first making such eliminations, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than twenty-five dollars nor more than two hundred dollars for each offense, and in addition the mayor, recorder or judge of the corporation court may suspend or revoke entirely the license of the person, firm or corporation owning or controlling such places of public amusement."

There are other sections of said ordinance not necessary to be stated for the purposes of this opinion.

On the 4th day of November, 1915, appellants applied to Hon. Wm. Masterson, Judge of the Fifty-Fifth Judicial District Court of Harris County, Tex., for a writ of injunction to enjoin the city of Houston and certain of its officers from prosecuting appellants for exhibiting moving pictures in said city without first obtaining a permit under the provisions of said ordinance. A temporary restraining order was granted by Judge Masterson, returnable to the sixty-first judicial district court of said county, and upon a hearing in said court the temporary restraining order was dissolved and the injunction prayed for denied. From this order and judgment Anthony Xydias and the other plaintiffs have appealed.

We are indebted to counsel for both parties for their very able, clear, and concise presentation of their respective contentions, and we shall avail ourselves of the information so ably furnished by the briefs of counsel, and shall take the liberty of quoting at length therefrom.

Appellants contend that the ordinance of the City of Houston, known as the ordinance creating a board of censors of the city of Houston, and prescribing their duties, which purports to regulate the exhibition of moving pictures in the city of Houston, is void and of no effect for the following reasons: First,

because the ordinance is in conflict with the state law; second, because the ordinance attempts to delegate to the board of censors the arbitrary power and authority to permit or forbid the exhibition of pictures by theater owners without reference to the character of the picture, there being no rule or regulation established by the ordinance for the guidance of the board of censors; third, because the ordinance, if enforced, would operate to suspend the state law; fourth, because the ordinance is unreasonable, vague, and indefinite; fifth, that plaintiffs are being arrested by the officers of the city of Houston for exhibiting moving pictures without obtaining a permit from the board of censors of the city of Houston, which greatly harasses and annoys plaintiffs, and which will subject them to numerous petty prosecutions under said ordinance, and deprive them of their property rights and privileges, to which they are entitled under the laws of the state of Texas, and that such arrests would result in great loss and damage to plaintiffs, and that they would be subjected to continued petty prosecutions under said void ordinance, unless the defendants are restrained by writ of injunction. Under the contention above stated, appellants present the following propositions:

First. "The state of Texas has levied an annual occupation tax of $25 upon exhibitors of moving pictures, and authorized the city of Houston to collect one-half of this amount from persons pursuing the occupation of exhibiting moving pictures, and where a person has complied with the state law and city ordinance in this respect, the city has no lawful authority to require a person who has obtained his occupation tax from the state and city to obtain a permit from the board of censors of the city of Houston before he can lawfully exhibit moving pictures."

Second. "The state of Texas has, by general law, prohibited the exhibition of any obscene, indecent, or immoral pictures by means of moving picture films, and the city of Houston has no power or authority to create a board of censors and authorize them to issue permits to exhibitors of moving pictures when in the opinion of the board of censors the moving pictures are not obscene, indecent, immoral, or contrary to good morals or public decency or calculated to promote the same, because the permit of said board of censors would not shield the person exhibiting such moving pictures from prosecution under the state law, and the city of Houston cannot either forbid or permit the exhibition of an indecent, obscene, or immoral picture."

Third. "Where the state of Texas has enacted a law prohibiting the exhibition of immoral, obscene, and indecent pictures by means of moving picture films, the terms are sufficiently broad to comprehend and include pictures that tend to promote immorality, indecency, or obscenity, and the act includes within its meaning pictures that are calculated to promote or encourage racial and sectional prejudices; and, the penalty for the violation of the act imposed by the state being greater than can be imposed by the city of Houston, the ordinance of the city of Houston, forbidding the granting of a permit by the board of censors for the exhibition of moving pictures of the above-described character, is void, because the board of censors have no power or authority to grant or refuse a permit for pictures of this character."

Fourth. "The city of Houston has no power

185 S.W.—27

or authority to create a board of censors with power and authority to grant or refuse permits for the exhibition of moving pictures, where the granting or withholding of the permits for the exhibition of pictures is wholly discretionary with the board of censors and there is no established rule or regulation by which the board of censors are to be governed as to when they shall or shall not grant a permit, and no requirement that the board shall grant a permit in any instance."

Fifth. "Where the state has, by article 1265 and the subdivisions thereof of the Criminal Code, forbidden and penalized owners of moving picture shows for exhibiting indecent, immoral, and obscene pictures, a city ordinance, forbidding the exhibition of a moving picture of any kind or character without a permit from the board of censors of the city, and penalizing a violation of the ordinance, is an unreasonable, and oppressive regulation, because the city could not forbid or permit the exhibition of pictures denounced by a state law, and there is no reason in requiring persons engaged in the moving picture business to obtain a permit from the board of censors before the exhibition of the picture, and because it subjects an owner of a legitimate business, authorized by the state, wholly to the unregulated, arbitrary, and discretionary power and control of the board of censors of the city of Houston."

We shall endeavor, by a general discussion of the whole case, to dispose of all of said propositions without taking them up separately in the order in which they are presented in appellants' brief.

Section 5, art. 11, of the Constitution of the state of Texas, adopted November 5, 1912, provides as follows:

"Cities having more than five thousand (5000) inhabitants may by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitation as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state."

Article 2 of the charter of the city of Houston, under the head of "General Powers," adopted under and by virtue of the foregoing constitutional provision, provides as follows:

"Sec. 2. The city council shall have power to preserve and promote good government, order, security, peace, quiet, amusement, education, prosperity, and the general welfare of said city and its inhabitants."

"Sec. 16. The city of Houston shall have power by ordinance duly passed to permit, forbid or regulate theaters, balls, dancehouses, and other public amusements, and to suppress the same whenever the preservation of order, tranquility, public safety or good morals may demand."

These provisions are plenary, and are designed and effective for the purpose to confer upon the city council that necessary supervisory power, not merely to punish, but to prevent immoral exhibitions which the interest of public morals and decency demands.

[1, 2] The ordinance complained of in no way conflicts with or violates any limitations prescribed by the Legislature, nor does it contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of

this state, but, on the contrary, it is entirely consistent with both the Constitution and legislative acts of this state pertaining to the powers conferred upon the city council of cities and towns of over 5,000 inhabitants. Since the adoption of section 5, art. 11, of the Constitution, supra, by the sovereign people of this state in November, 1912, the city council does not derive its power to enact such ordinances as it deems necessary to prevent immoral exhibitions within its corporate limits from the Legislature, but it derives such power, directly from the sovereign people, and the only limitations placed on such power by said section is that said council shall not pass any ordinance inconsistent with the Constitution and general laws enacted by the Legislature of this state. Since the adoption of said constitutional section, there is no longer a necessity for the Legislature to confer power upon such city councils, but it may limit its powers only. In other words, the Legislature no longer delegates legislative power to such city councils. But, however, if such delegated power was needed, we find ample legislative authority in articles 873, 874, and 933 of the Revised Statutes of 1911, to authorize the city council to pass and enforce the ordinance in question. These articles provide that city councils shall have power:

"Art. 873. To license, tax, and regulate, or prohibit, theaters, circuses, the exhibitions of common showmen, and of shows of any kind, and the exhibition of natural or artificial curiosities, caravans, menageries, and musical exhibitions and performances.

"Art. 874. To authorize the proper officer of the city to grant and issue licenses, and to direct the manner of issuing and registering thereof, and the fees and charges to be paid therefor."

"Art. 933. In all cases where, by any provision of this title, or by ordinances passed in pursuance thereof, a person is required to obtain a license for any calling, occupation, business or avocation, and has, on complaint before the mayor or recorder, been adjudged guilty of violating any rules, regulations, or ordinance of the city council in relation thereto, the mayor or recorder, in addition to fine and imprisonment, or either, may suspend or revoke the license so granted."

[3] Moving picture exhibitions are subject to police surveillance and control in the interest of public morals, and it is the right and duty of the city of Houston, under its express charter powers and under the general exercise of its police powers, to regulate, permit or forbid such exhibitions, and to this end to appoint a board of censors, clothed with such reasonable authority as is necessary to effect the purposes of their appointment.

The case of Block v. Chicago, 239 Ill. 251, 87 N. E. 1011, 130 Am. St. Rep. 219, is one in which an ordinance providing for the regulation of moving picture shows, to secure decency and morality in the exhibition, and which made it unlawful for any person to exhibit moving pictures without first obtaining a permit therefor from the chief of police, and which made it the duty of the chief of police to refuse the permit if the pictures were immoral or obscene, was upheld by the Supreme Court of Illinois. It was contended that the ordinance was unlawful because it discriminated against picture shows, in favor of other shows, and because it constituted a delegation of power to the chief of police to permit, or refuse to permit, exhibitions. The Supreme Court of Illinois, in discussing the matter, says:

"The purpose of the ordinance is to secure decency and morality in the moving picture business, and that purpose falls within the police power. It is designed as a precautionary measure, to prevent exhibitions criminal in their nature and forbidden by the laws. * * * The ordinance applies to five and ten-cent theaters such as the complainants operate, and which, on account of the low price of admission, are frequented and patronized by a large number of children, as well as by those of limited means who do not attend the productions of plays and dramas given in the regular theaters. The audiences include those classes whose age, education, and situation in life especially entitle them to protection against the evil influence of obscene and immoral representations. The welfare of society demands that every effort of municipal authorities to afford such protection shall be sustained, unless it is clear that some constitutional right is interfered with. The defendant by its charter has been vested with very extensive powers to enable it to accomplish the purpose of this ordinance. By clause 41 of article 5 it is authorized to license, tax, regulate, suppress, and prohibit exhibitions, shows, and amusements. * * * Clause 58 authorizes the defendant to regulate places of amusement. * * *

"It is also argued that the ordinance is void because it delegates legislative and judicial authority to the chief of police by giving him the power to determine whether a picture or series of pictures is immoral or obscene. * * * It is true that a legislative body cannot divest itself of its proper function to determine what the law shall be, but it may authorize others to do those things which it might properly, but cannot understandingly or advantageously do. * * * Without that power legislation would become oppressive and yet imbecile, and that local laws, almost universally, call into action to a greater or lesser extent the agency and discretion either of the people or individuals to accomplish in detail what is authorized or required in general terms. Government could not be carried on if nothing could be left to the judgment and discretion of administrative officers. * * *

"But it is said that * * * the ordinance fixes no standard by which the question is to be determined. Manifestly it would be impossible to specify in an ordinance every picture or particular variety of picture which would be considered immoral or obscene, and no definition can be formulated which would afford a better standard than the words of the ordinance. It is doubtless true, as said by counsel, that there are people who differ upon the subject as to what is immoral or obscene. There are those shameless and unclean, to whom nothing is defilement, and to whose point of view no picture would be considered immoral or obscene. Perhaps others could be found, with no laxity of morals, who pay homage to art and would not regard anything as indelicate or indecent which had artistic merit and would look upon any person entertaining different sentiments as of inferior intelligence, without proper training upon the subject and blinded with bigotry. Both classes are exceptional, and the average person of healthy and wholesome mind knows well

enough what the words 'immoral' and 'obscene' mean and can intelligently apply the test to any picture presented to him."

In the case of the Mutual Film Corporation v. Industrial Commission of Ohio, 236 U. S. 233, 35 Sup. Ct. 387, 59 L. Ed. 552, the Legislature had created a board of censors of moving picture films, and had provided, among other things, that the board should examine and censor all motion picture films to be publicly exhibited and displayed in the state of Ohio, for a fee to be charged by the board, and further provided:

"Only such films as are in the judgment and discretion of the board of censors of a moral, educational, or amusing and harmless character shall be passed and approved by such board."

This act was attacked by plaintiff on the ground: First, that the Legislature had no power to interfere with the dissemination of information by pictures, because the same was a violation of freedom of speech and press; and, second, that the law was void as constituting . a delegation of legislative authority. On the first point, the court, while conceding that the pictures might have an educational value, said:

These films, however, "may be used for evil, and against that possibility the statute was enacted. Their power of amusement and, it may be, education, the audiences they assemble, not of women alone nor of men alone, but together, not of adults only, but of children, make them the more insidious in corruption by a pretense of worthy purpose, or if they should degenerate from worthy purpose. * * * Besides, there are some things which should not have pictorial representations in public places and to all audiences. And not only the state of Ohio, but other states, have considered it to be in the interest of public morals and welfare to supervise moving picture exhibitions. We would have to shut our eyes to the facts of the world to regard the protection unreasonable or the legislation to effect it a mere wanton interference of personal liberty. * * * The judicial sense supporting the common sense of the country is against the contention. As pointed out by the district court, the police power is familiarly exercised in granting or withholding license for theatrical performances as a means of their regulation" (citing many cases). "The exercise of the power upon moving pictures has been sustained" (citing cases, among them Block v. Chicago).

The court then, discussing the second complaint, that the legislative authority has been delegated, say:

"While administration and legislation are quite distinct powers, the line which separates exactly their exercise is not easy to define in words. It is best recognized in illustrations. Undoubtedly the Legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply. If this could not be done, there would be infinite confusion in the laws, and in an effort to detail and to particularize, they would miss sufficiency, both in provision and execution. The objection to the statute is that it furnishes no standard of what is educational, moral, amusing, or harmless, * * * but the statute by its provisions guards against such variant judgments, and its terms, like other general terms, get precision from the sense and experience of men and become certain and useful guides in reasoning and conduct. * * * Upon such sense and experience, therefore, the law properly relies. * * * If this were not so, the many administrative agencies created by the state and national governments would be denuded of their utility, and government in its most important exercises become impossible."

In a case decided at the same term (Mutual Film Corporation v. George H. Hodges, Governor of Kansas, 236 U. S. 248, 35 Sup. Ct. 393, 59 L. Ed. 651), the statute attacked provided that:

"On and after the first of April, 1913, it shall be unlawful to exhibit or use any moving picture film or reel unless the same shall have been examined and approved by the superintendent of public instruction. * * * It is made the duty of such officer * * * to approve such as he shall find to be moral and instructive, and to withhold his approval of such as tend to debase or corrupt morals."

This statute also was approved by the Supreme Court of the United States as a valid exercise of the police power. See, also, Higgins v. Lacroix, 119 Minn. 145, 137 N. W. 418, 41 L. R. A. (N. S.) 737; Ex parte Broussard, 74 Tex. Cr. R. 333, 169 S. W. 660; Gundling v. Chicago, 177 U. S. 183, 20 Sup. Ct. 633, 44 L. Ed. 725; Wilson ˙v. Eureka City, 173 U. S. 32, 11 Sup. Ct. 664, 35 L. Ed. 286; Dillon on Municipal Cor., vol. 2, § 598, and notes thereunder, and City of Waco v. Powell, 32 Tex. 258.

[4] Appellants also contend that as they have paid the occupation taxes due to the state and city of Houston, for the privilege of conducting moving picture shows, the city of Houston has no lawful right to require them to obtain a permit from the city before exhibiting moving pictures. Such contention is untenable. It can hardly be seriously contended that by requiring the payment of a small occupation tax for the privilege of conducting such exhibitions the Legislature or the city of Houston intended to or did thereby forfeit the right of Houston to regulate such exhibitions under its charter and general police powers, nor that such payments had any such effect. The authorities above cited refute any such contention.

Appellants further contend that as the state has, by an act of the Legislature, made the exhibition of indecent, immoral, and obscene pictures a misdemeanor, punishable by fine, the charter powers of the city of Houston to create a supervisory board to prevent the exhibition of such indecent, immoral, and obscene pictures have been thereby repealed and abrogated. It was never intended by the Legislature, nor can such act of the Legislature have the effect, to deprive the city of Houston of the right granted, in its charter "to prevent, forbid or regulate" theatrical and kindred exhibitions in the interest of public morals. Such act of the Legislature neither directly nor by implication repeals, or undertakes to repeal or abrogate, the power of said city to regulate such exhibition. The Legislature has not undertaken to cover the whole subject-matter covered by the ordinance in question. The conten-

tion of appellants proceeds on the theory that the Legislature has undertaken to cover the field of regulation of moving pictures and other kindred exhibitions, thus excluding from the field the operation of municipal power and authority. No such condition exists, but, on the contrary, the state merely by one act provides for the amount of occupation tax that shall be paid to the state by a moving picture show, and by another act, passed in 1911, denounces the exhibition of indecent, immoral, and obscene pictures.

As to the occupation tax, it has been settled by so many authorities and in such a conclusive way that the right to tax and the right to regulate under the police power are referable to entirely different theories or governmental control that it is needless to cite authorities on the proposition that the fixing of the occupation tax in a manner fixes or determines the right to fix a license fee under the police power, and to otherwise provide regulations for the conduct of a business subject to the exercise of the police powers. Among the most familiar subjects of judicial construction have been those ordinances and laws which have undertaken, in the exercise of police power, to fix license fees and regulate businesses which are lawful and permitted to exist, but which are still subject to the regulation of the police power. If appellants' contention is correct, it would follow that whenever the state provides for an occupation tax to be paid by any character of amusement or calling, it thereby turns loose the citizen who has paid the tax freed from any of the restraints of police regulation as to the way and manner in which the calling shall be conducted, and free from those salutary restraints which the public health, safety, and morals require. Appellants have confused the power of taxation with the power of regulation and license.

[5] Now, as to appellants' contention that the act of 1911, denouncing as an offense the showing of pictures obscene, immoral, or indecent has deprived the city of Houston of its right to prevent such exhibitions under its supervisory authority. It will be noted that the cases relied on by appellants are illustrated by that of City of Houston v. Richter, 157 S. W. 189, which was a case in which the state, by its legislation, had undertaken to cover an entire subject or business, and to define the conditions under which it might be carried on. It has never been held that a city is ousted of its jurisdiction with reference to subject-matter by an act which does not undertake to discuss that subject-matter, or repeal a jurisdiction previously by statute conferred. The true rule is, where the state law speaks, the city ordinances must be silent; where the state law is silent, the city must speak. In the Richter Case, the state had provided for an examining board, and for all of the conditions necessary for the enjoyment of a license. In this case the state law undertakes no further to regulate the character of entertainment, or the character of the building in which it is to be exhibited, than to denounce as an offense the exhibition of immoral and obscene pictures. The city cannot declare an offense and fix a penalty for exhibiting immoral, obscene, or indecent pictures, because the state has already denounced that as an offense, and fixed the penalty upon it larger than the city can impose, but the state has nowhere undertaken the establishment of a regulatory board of censors for the purpose of determining in advance whether the pictures are proper to be shown and of preventing and suppressing them before they are shown. The true principle controlling this case is announced by this court in Robinson v. City of Galveston, 51 Tex. Civ. App. 292, 111 S. W. 1076, in the concluding words of the opinion, in which the court says:

"There being no general law of the state upon this subject applicable to said city, the ordinance in question was a proper exercise of the powers conferred by the city charter, and must be upheld."

In this case the Legislature has not provided for the regulation or supervision of these shows, has not appointed a board of censors or other persons to perform this essential service, and therefore, to use the language in the Robinson Case, "there being no general law of the state on this subject," the ordinance showed proper exercise of the powers conferred by the city charter, and must be upheld.

What has been said fully disposes of all of appellants' contentions; and, as we find no error in the judgment rendered in the trial court, the same is in all things affirmed.

Affirmed.