

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Ralph Logan
County Attorney
Tom Green County
San Angelo, Texas

Dear Sir:

Opinion No. 0-1288
Re: The constitutionality of the San
Angelo ordinance regulating barber
shops.

Your request for the opinion of this department
on the constitutionality of the San Angelo ordinance
regulating barber shops, a copy of which accompanied your
letter, has been received.

As you have analyzed, the ordinance has only
two features, one requiring a license from the City of
San Angelo and the payment of certain fees, termed
supervision and inspection fees; the other, regulating
the hours within which a barber shop may remain open.
We shall discuss these in such order.

May we first point out that the case of Hanzel
et al vs. City of San Antonio, 221 SW 237, decided in
1920, cited in your letter, declaring the validity of
municipal regulation of barber shops did not have before
it the questions of prior state regulation of the same
nature, or of the regulation of the hours within which
a barber shop could remain open.

The Texas Barber Law, Article 734a of our Penal
Code, and amendments thereto, was originally passed in
1929, whereby regulations of barbers in the particulars
set out in the San Angelo ordinance, pertaining to license
requirements, was enacted into state law.

We, therefore, have the question as to the
validity of a city ordinance which, in similar particulars

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

to the State law, makes additional requirements and
regulations. In other words, the State law says that
an individual may follow the occupation of barbering
in Texas upon compliance with certain specified regula-
tions as to license, payment of certain fees, display
of certificate of license, physical fitness and etc.;
whereas, the San Angelo ordinance says that you cannot
follow this occupation in San Angelo although you have
complied with all requirements of the State law, without
securing an additional license from the city and paying
additional fees therefor.

As bearing on such a situation, we quote from
the following cases as indicated. Ex Parte Brewer, 152
SW 1068, at page 1069:

"There is no inhibition in the consti-
tution or laws of this state which will pre-
vent the city from dealing with a matter with
which the state laws do not deal where the
police power is conferred upon the city...."
(underscoring ours).

The City of Houston vs. Richter, et al, 157 SW
189, at page 193:

"The terms of the ordinance of the city
have been heretofore set out. The effect of
its provisions is to prohibit, under penalty
of fine, any plumber, who has received this
license from the board of examiners under the
provisions of the statutes, from exercising
the privileges given him by the statutes, un-
less he further gives the bond provided by
the ordinance and receives a further license
from the City of Houston, issued by the city
engineer.... We think it is too clear for
argument that the ordinance in question is in-
consistent with the statute referred to."

Massachusetts Bonding & Insurance Company, et
al vs. McKay, 10 SW 2nd 770, at page 771:

"In a supplemental brief, appellants urge

as fundamental error that the ordinance in question, requiring plumbers to execute a $3,000 bond in order to procure a license to carry on their business in the city of Dallas, is unconstitutional and void, and that therefore said bond executed pursuant thereto is of no force and effect. We think their contention in this respect is also good. In Articles 1076 to 1081, R. S. 1925, the legislature has required that plumbers in cities and towns of more than 5,000 inhabitants be licensed before they can operate, and has undertaken to regulate the manner in which such license shall be issued. The statute itself does not provide for any bond to be executed as a prerequisite to the conduct of a plumber's business. The legislature having so regulated the matter by prescribing fully the manner in which plumbers should be licensed, the city of Dallas had no authority to impose additional burdens and requirements in the premises. This question was expressly decided by the Galveston Court of Civil Appeals, in Houston v. Richter, 147 SW 169. This holding was again expressly recognized in Xydias Amusement Co. v. City of Houston (Tex. Civ. App.) 185 SW 416. See, also, Parish v. Wright (Tex. Civ. App.) 293 SW 659. And this general law of the state applies to the city of Dallas, irrespective of the provisions of its special charter. Davis vs. Holland (Tex. Civ. App.) 168 SW 11; Parrish vs. Wright, supra. Said ordinance imposing additional burdens to those required by the state law upon plumbers within that city was inconsistent with and in conflict with the state law, and was therefore void. It follows then that said bond given pursumt to such ordinance was likewise void."

Xydias Amusement Company vs. City of Houston, 185 415, at page 420:

"The true rule is, where the state law

speaks, the city ordinance must be silent;
where the state law is silent, the city must
speak."

See also the cases of Mantel vs. State, 117
SW 855 and Robinson vs. City of Galveston, 111 SW 1076.

We conclude, therefore, that the San Angelo
ordinance, in its requirement of an additional license
from the City of San Angelo and of the payment of addi-
tional fees to the City of San Angelo, invades a field
of legislation already usurped by the legislature of
Texas.

It is significant, and conclusive on its in-
validity, in these particulars, that the requirements of
the ordinance do not enlarge upon and add to the require-
ments of the state statute in specific matters pertaining
to the protection of the public health. In sections (a)
and (b), the health requirement already enacted into
state law, and subject to enforcement by the police de-
partment of the City of San Angelo, are made a part of
the ordinance as touching such matters. The ordinance
simply requires a barber to have an additional license
from the City of San Angelo, and to pay an additional
fee, to-wit, $1.50 for three months; $3.00 for six months;
$5.00 for twelve months.

Under the decisions of the courts of Texas, set
it above, it is our opinion that these provisions of the
ordinance are clearly invalid.

We now consider Section 5 of the ordinance which
reads as follows:

"It shall be unlawful and an offense for
the owner, manager, proprietor or person in
charge of any barber shop to permit or allow
any such shop to remain open for business or
to permit or allow the practice of barbering
in said shop on Sunday or at any other time,
except between the hours of 8:00 o'clock A. M.
and 9:00 o'clock P. M. on Saturdays and be-
tween the hours of 8:00 o'clock A. M. and 6:00
o'clock P. M. on other days in the week."

In this connection, may we point out first that the ordinance treats of the hours within which a barber shop may remain open, and does not treat as to the hours a barber may work in such shop. Hence, the validity of regulation, suggested by you in your brief, with reference to the hours women and children may work, would not seem to be analagous. The courts in the cases later to be noted clearly make this distinction.

There is no state statute regulating the hours in which a barber shop may remain open. Neither have we been able to find in our research a Texas case passing on this question as pertaining to barber shops.

With reference to such an ordinance touching pool halls, the court in the case of Ex Parte Brewer, supra, says:

"There is no inhibition in the constitution or laws of this state which will prevent the city from dealing with the matter with which the state laws do not deal where the police power is conferred upon the city, and the state in its laws, having fixed no hours of closing for pool halls, it being a subject of regulation, such hours may be regulated by the city within reasonable limits."

The court, in this quotation, touches upon the two questions involved in any legislation of an occupation as to the hours it shall remain open: (1) If such occupation is a subject of regulation; (2) If the regulation is reasonable. The answer to these questions involve a large field of the law.

We quote from Volume 30 of Texas Jurisprudence at pages 120, 121, 122 and 123:

"Generally speaking, municipal corporations have the right, under the police power, to safeguard the health, comfort and general welfare of their citizens by such reasonable regulations as are necessary for that purpose. The police power is not an arbitrary one; it has its limitations. Thus it is subject to the limitations imposed by the constitution upon every power of government, and will not be permitted to invade or impair the fundamental liberties of the citizen. Also, it is founded in public necessity and only public

necessity can justify its exercise. It is
commensurate with, but does not exceed, the duty
to provide for the real needs of the people in
their health, safety, comfort and convenience
as consistently as may be with private proper-
ty rights. The interest of the public gener-
ally, as distinguished from those of a parti-
cular class, must require the interference.

"All property is held subject to the
valid exercise of the police power; nor are
regulations unconstitutional merely because
they operate as a restraint upon private rights
of persons or property or will result in loss
to individuals. The infliction of such loss
is not a deprivation of property without due
process of law; the exertion of the police
power upon subjects lying within its scope,
in a proper and lawful manner, is due process
of law . . .. But the police power is sub-
ordinate to the right to acquire and own prop-
erty, and to deal with it and use it as the
owner chooses, so long as the use harms no-
body. It may be invoked to abridge the right
of the citizens to use his private property
when such use will endanger public health,
safety, comfort or welfare, - and only when
this situation arises. . ..

"The police power authorizes only such
measures as are reasonable; to be valid as an
exercise of this power, an ordinance must be
reasonable in its operation upon the persons
whom it effects and must not be unduly oppres-
sive - that is, it must appear that the means
adopted are reasonably necessary and appro-
priate for the accomplishment of a legitimate
object falling within the domain of the police
power."

These many considerations, as pertaining to
arber shops, have never been resolved by a Texas court,
ooking to other jurisdictions we find the great weight
f authority holding legislation regulating open hours
or barber shops to be invalid. We shall briefly review
hese.

The Supreme Court of Minnesota, in 1935, in the case of State vs. Johannes, 259 NW 537, held such an ordinance unconstitutional and void and as violative of the due process clauses of the State and Federal constitutions, the court saying:

"Eight times have such ordinances been before the courts of last resort in this country and seven times have they been held invalid as unjustifiable attempts to exercise the police power."

The Supreme Court of Michigan, in 1937, in the case of Eanes vs. the City of Detroit, 279 Mich. 531, 272 NW 896, in holding such an ordinance invalid says:

"By the great weight of authorities, the ordinance at bar, so far as it fixes open hours for barber shops, is not within the police power and, in that particular, is void."

The Supreme Court of Washington, in 1934, in the case of Patton vs. City of Billingham, 38 Pac. 2nd 364, holds such an ordinance unreasonable, arbitrary and void, the court remarking that such an ordinance does not regulate the business of barbering, but dictates its operations.

The Supreme Court of Rhode Island, in 1938, in the case of Amitrano vs. Barbaro, 1 Atl. 2nd 109, holds such legislation unconstitutional saying:

"We have, therefore, determined to follow the decisions of those courts, representing the great weight of authority, which has decided that legislation of the type before us is in violation of the appropriate provisions of the Federal and State Constitutions."

The Supreme Court of Wyoming, in 1929, in the case of State vs. City of Laramie, 275 Pac. 106, held such legislation not to be a reasonable exercise of the power to license, regulate and control barber shops and therefore invalid.

The Supreme Court of Mississippi, Division A, in 1931, in the case of Knight vs. Johns, 137 So. 509, held such legislation to be an unreasonable exercise of the police power.

The Supreme Court of Louisiana, in 1930, in the case of City of Alexandria vs. Hall, 131 So. 723, 171 La. 595, held such an act unconstitutional.

We have similar decisions by the Supreme Court of Colorado in the case of City and County of Denver vs. Schmid, 52 Pac. 2nd 388, in 1935; by the Supreme Court of California, in 1935, in the case of Ganley vs. Playes, 40 Pac. 817; by the Supreme Court of Georgia, in 1927, in the case of Chaires et al vs. the City of Atlanta, 164 Ga. 755, 139 SE 559; by the Supreme Court of Tennessee, in 1939, in the case of State vs. Greeson et al, 124 SW 2nd 253; and by the Supreme Court of Oklahoma, 1938, in the case Oklahoma City vs. Johnson, 82 Pac 2nd 1057.

Finally, we note the opinion of the Supreme Judicial Court of Massachusetts, in re Opinions of the Justices, 14 NE 2nd 953:

> "The questions relate to a pending bill which regulates the hours of opening and closing of barber shops by providing that they shall not be open earlier than 8:00 o'clock in the forenoon, nor remain open later than 6:00 o'clock in the afternoon, during part of the year and 7:00 o'clock in the afternoon during another part of the year, except that on Saturdays and the evening before each legal holidyy they may remain open until 9:00 .... The precise point involved in these questions have arisen in other jurisdictions. The great weight of authority, in both soundness of reasoning and number of decisions, holds that legislation of this nature violates the provisions of state and federal constitutions." (Citing cases from the various jurisdictions.)

Jurisdictions holding the opposite view, insofar as we have been able to ascertain are represented in the

Hon. Ralph Logan, Page 9

following cases:

Seldman vs. Cincinnati, 20 Fed. Sup. 531;
Falco vs. Atlantic City, 99 N. J. L. 19, 121 A. 610;
Wilson vs. Zanesville, 130 Ohio State 286, 199 NE 187.
The latter two cases hold that such legislation is not
unreasonable, has a real and substantial relation to
public health, morals and safety and is a valid exer-
cise of the police power, and is constitutional.

The case of Seldman vs. Cincinnati, 20 Fed.
Sup. 531, cited by you in your brief, was a decision of
the Federal District Court of Ohio where the Supreme
Court of Ohio, in the case of Wilson vs. City of Zanes-
ville, supra, had held such legislation to be valid and
constitutional. Further, the court as stated at page
542 of the opinion indulged every presumption in favor
of the constitutionality of the legislation and further,
that it had not been "shown beyond a rational doubt" that
such legislation violated any of the provisions of the
constitution of the United States.

We are unable to predict how the courts of
Texas will construe a provision such as that of the or-
dinance at hand. Precedents established by our courts
in passing upon similar legislation pertaining to other
businesses or occupations are of little help because
of the facts and circumstances peculiar to each business or
occupation. As said by the court in the case of the State
vs. Johannes, supra:

"If we were to attempt to formulate a
comprehensive definition of what may or may
not be a proper exercise of the police power,
we would be confronted with a task of almost
insurmountable difficulty. It has been said
that the power is incapable of definition."

It is believed, however, that the majority view
is based upon sounder reasoning as illustrated in the
following exerpts from the opinion of the Massachusetts
Supreme Judicial Court:

"The occupation of being a barber is an
ancient and lawful business. Barber shops
are not obnoxious, but are commonly regarded
as indispensable under present conditions...
Their relation to the public is such as to

render them amenable to legislative regula-
tion to the end that those who frequent them
for the service there rendered may be protect-
ed from communicable diseases, unhealthful
practices, and unsanitary conditions, so far
as practicable.... The proposed bill does
not in terms shorten the hours of labor of
barbers. It does not purport to do that. It
merely limits the hours during which barber
shops may be kept open.... We are unable to
perceive how the limitations of the proposed
bill are founded upon any reasonable relation
between the acts forbidden and the promotion
of the public health or the public morals.
Barber shops may be subjected to regulation
for protection of the public health and morals.
The proposed bill contains no rules designated
to promote cleanliness, or to insure sanita-
tion of barber shops. Provisions to accomplish
such ends is found in the power to promulgate
reasonable regulations by the Board of Regis-
tration of barbers, in the statutes already re-
ferred to and in the right of inspection of bar-
ber shops.... Shortening the hours during which
barber shops may be kept open would not facilitate
the inspection of barber shops. There is ample oppor-
tunity for inspection of barber shops without
closing them. The suggestion that the proposed
statute would 'further protect the public against
communicable diseases by conserving the energy
of persons working therein and giving them a
reasonable amount of time to attend to proper
sanitation therein,* seems almost fanciful.
The energy such to be conserved is not obvious,
nor is the protection of the public from communi-
cable diseases.... There are many barber shops
in the Commonwealth operated by the proprietor
without help. It might well be a great hardship
for such barber not to conform to the needs of
his customers as to the hours of keeping his shop
open. It might interfere to a great extent with
his business and his income to comply with the
hours prescribed by the proposed bill.... The

Hon. Ralph Logan, Page 11

proposed bill violates fundamental, constitutional guarantees as depriving persons of liberty and property without due process of law and as denying persons the protection of liberty and property according to standing laws. It imposes limitations that are unconstitutional."

You are therefore respectfully advised that it is the opinion of this department that Section 5 of the Ordinance of the City of San Angelo, regulating the hours within which barber shops may remain open, is unconstitutional.

We trust this answers your inquiry satisfactorily, and remain

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Wm. J. Fanning
Assistant

APPROVED OCT 7, 1939

WJF:AW

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN