The facts in this case as set forth in the affidavits are as follows: Complainants, Public Welfare Pictures Corporation *Page 133 
and Samuel Cummins, own a film called the "Naked Truth." They entered into a contract with the owners of the Capitol theatre to exhibit the film there. Before the date of the first public exhibition a private view was had, attended by Dr. Charles V. Craster, chief of the board of health of Newark; by Miss Justina T. Ellar and Robert Lawrence, of the Newark police department — these two being known as the board of censors, and appointed by William J. Brennan, head of the department of public safety of Newark, and also by a number of ladies invited by the board of censors and by Mr. Brennan. Dr. Craster saw nothing objectionable in the film. The board of censors thought it objectionable unless presented in a Y.M.C.A., in a school building or a church, without charge. In passing, I may say I cannot see why a play, objectionable in itself, is made less so by allowing the public to see it in a church, and for nothing. What the invited ladies thought of it does not appear.
Commissioner Brennan then caused a notice to be given complainants that the presentation of the film was prohibited; that he would prevent the production by force, would revoke the theatre license and arrest all persons connected with the exhibition.
Complainants thereupon went to Commissioner Brennan and offered to exhibit the film to him, and if he decided that it was objectionable it would not be produced. Commissioner Brennan said he would not view the exhibition — that Justina Ellar and Robert Lawrence were persons in his department to whom he confided the censorship of films and that he would stand behind their judgment.
Complainants now asked an injunction restraining the commissioner and the city from interfering with this production, alleging great monetary loss if they are not allowed to produce it. There are no answering affidavits.
The question here is not has the legislature the right to say by statute that a municipality may, in the exercise of its police power, control theatres and moving picture shows, and to decide what are and what are not proper exhibitions; it is, has the legislature done this. The authorities hold as follows *Page 134 
(28 Cyc. 694): "In the absence, however, of an expressed delegation or of a necessary conferment resulting from some inherent or given expressed power the municipality cannot lawfully act."
It is admitted that there is no legislative authority for this so-called censorship except as may be inferred from the general welfare clause of the Home Rule act, chapter 152, laws 1917, article 14, section 2.
This clause gives municipalities the power "to make, enforce, amend and repeal such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States as they may deem necessary and proper for the good government, order, protection of persons and property, and for the preservation of the public health, safety and prosperity of the municipality and its inhabitants as may be necessary to carry into effect the powers and duties conferred and imposed by this act or by any law of this state."
This, it does not seem to me, is specific enough to include the right to censor plays given in a theatre duly licensed by the municipality.
In 28 Cyc. 705, the subject of general welfare clauses is discussed, and it is stated, citing numerous authorities: "Municipalities are not general guardians of the public morals and, therefore, may not unduly interfere with the liberty of the citizen by ordinances forbidding acts not unlawful or harmfulper se. Even express authority for such ordinances must be strictly construed in passing upon their validity."
There is another principle of law which should be here considered. It is "Potestas delegata non est delegari." In 28Cyc. (at p. 694) it is stated: "This is a general maxim applicable with peculiar force to any form of sovereign power, and operates to prevent the governing body of a municipal corporation entrusted by the state with the police power from delegating its high functions to any other body or officer even to the mayor or other members of the body; the trust is official and personal, and may be discharged only by those to whom the state commits it." The cases cited are too numerous to be repeated here. If the legislature had clothed *Page 135 
the municipality of the city of Newark with the right to censor plays, it might or might not be legal. But certainly by no stretch of the imagination can it be held that the director of public safety of a municipality can delegate to a policeman or a policewoman or a voluntary committee of women or to all combined the authority to say whether a certain play should or should not be produced.
We then come to a consideration of the cases heretofore decided in this state.
The first is that of Esplanade Amusement Co. v. Bartlett.
It is unreported, docket No. 40-305. Complainants' affidavits state that it conducts a duly licensed theatre at Atlantic City; that it contracted with the co-complainant, Epoch Producing Company, to present a photo-play called "The Birth of a Nation." That a large sum of money — over $100,000 — was expended in making the play; that Wm. H. Bartlett, director of public safety, served a notice on complainants that after a certain day the production would be prohibited, and that the notice was served "without warning, without any reason assigned for the prohibition and without any hearing afforded complainants and without any opportunity given them to be heard."
The facts in that case were therefore almost identical with the facts in the case at bar. The prayer of the bill is that Wm. H. Bartlett, director of public safety, the city of Atlantic City and all officials and persons under their direction be enjoined from in anywise interfering with complainants in the exhibition of the picture drama. The answering affidavits set forth that the play contains scenes which "have no practical, artistic or moral value, which tend to create disorder; which have the effect of creating racial prejudice and hatred; which appeal only to the morbid curiosity of the mob and which offend and degrade all who witness those scenes." Chancellor Walker granted an injunction restraining the director of public safety and the city of Atlantic City in accordance with the prayer of the bill. No opinion was filed.
The second case is that of Hyde Behman Amusement Co. et al.
v. Frederick C. Breidenbach et al., unreported, *Page 136 
docket 40-631. This case also involved the film "The Birth of a Nation." Complainants' bill and affidavits are practically the same as in the case above cited. There are no answering affidavits. Vice-Chancellor Howell granted an injunction in practically the same terms as that granted by the chancellor in the Esplanade Case. The vice-chancellor filed a memorandum in which he says: "I know of no power in our police department to censor plays or theatrical exhibitions. None was cited on the argument, and I take it that, therefore, none exists. I, therefore, cannot see where the police authorities get their right to meddle in such matters." Similar proceedings with like results were had before Vice-Chancellor Howell in two other suits — one involving the production of a play called "Mary Odile," the other a film known as "Damaged Goods." These cases are not reported.
No one is more anxious than I to see that the city of Newark is, and remains, a clean city, and no one is more opposed to indecent exhibitions than I. However, I cannot set up my personal opinion in the matter, and I must decide this motion according to the law which seems to me to govern, and according to the decisions heretofore rendered by this court. I wish it to be distinctly understood that I am expressing no opinion as to the morality or immorality of this production. I have not seen it.
I will grant the injunction requested. As to its terms, I think they should follow those of the injunction in the Atlantic City case which was granted by the present chancellor. *Page 137