FRANK MANGIELLO, RELATOR, v. MAYOR AND ALDER-
MEN OF JERSEY CITY ET AL., RESPONDENTS.

Argued May 2, 1928—Decided May 29, 1928.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and
KATZENBACH.

For the relator, *Mark A. Sullivan.*

For the respondents, *Thomas J. Brogan.*

PER CURIAM.

This case is before us upon an alternative writ of *man-
damus.* The writ is directed to the mayor and aldermen of
Jersey City, a municipal corporation, and the superintendent
of buildings. The relator entered into an agreement for the
purchase of premises in Jersey City known as Nos. 20-22 Bost-
wick avenue. The land has a frontage of seventy-five feet on
said avenue and a depth of one hundred feet. The lot is en-
closed by a high picket fence with a gateway therein of suffi-
cient width to permit auto trucks to pass through. On the
easterly side of the lot facing west is erected a one-story
frame building. The walls are of board sheathing covered on
the outside with galvanized iron pressed to resemble brick.
The relator is engaged in the ice business. He purchased the
premises to store ice temporarily for delivery to his custo-
mers in Jersey City. The relator's plan was to store cakes of
ice in the building during the late afternoon of one day and
remove the same in the morning of the following day. To
equip the building for such a use required the closing of the

windows and the lining of the interior with three inches of cork. The relator applied for a permit to make these alterations. Under an ordinance of Jersey City, passed June 3d, 1924, entitled "An ordinance to regulate the erection and alteration of all buildings and structures to be used, or designed to be used, for any purpose other than as residence or for living apartments," permission for an alteration must be obtained from the board of commissioners. This permission the board in the instant case refused to grant. No zoning question is involved. The grounds of refusal were that the sealing of the windows, lining the building with cork and using it for the temporary storage of ice, would be detrimental to the health of the people in the community, the safety of children and pedestrians due to the passing of trucks over the sidewalk to and from the enclosure, and the trucks would create a nuisance by disturbing the neighborhood in the early morning hours. In the depositions taken under the writ, the respondents also claim that a fire hazard would be created "by the accumulation of trucks in the delivery of ice due to the usual carelessness of people running automobiles, backing up and going ahead."

An examination of the grounds advanced by the city to sustain its refusal to grant the permit for alterations leads us to the conclusion that they are insufficient and unsupported by the evidence, and that the action of the board of commissioners in denying the permit is unreasonable. There is no evidence that the use of the building for the storage of ice would be detrimental to health. The safety of children and pedestrians by the passing over the sidewalks of trucks to and from the enclosure in which the building is located would be no more imperiled by the use of the building for the storage of ice than for any other purpose to which it might be put which would require trucks to pass to and from the enclosure over the sidewalk. If this were a sufficient ground to refuse a building permit for alterations it would apply equally to any kind of business conducted in a yard to which entrance for trucks would have to be obtained by passing over a sidewalk. Such a prohibition would render unavailable many properties adopted for business purposes. It is unreasonable.

The operation of trucks in the morning hours may create a noise disquieting to some persons. This is a matter which is unavoidable in cities. The baker, milk vendor, newspaper carrier and iceman for the convenience of their patrons must make their deliveries in the early morning hours. To make deliveries trucks or other conveyances must be loaded and used. No trade can in such matters be discriminated against. The iceman is entitled to as much consideration as the baker or milkman. The same argument applies with equal force to the question of fire hazard. As a general proposition the assembling and improper handling of motor vehicles may enhance the possibility of fire. But this method of transportation is recognized. It is useful. It may be considered necessary to employ it in the present day competition in business. To refuse to permit a building to be used for purposes which require the use of trucks because the fire hazard may per chance be increased by such use is unreasonable and a prohibition against the use of property which is unwarranted. In many places in our cities trucks and automobiles are congregated in public places in large numbers. The hazard of fire may thereby be increased. Successful attempts to prevent in this regard increased fire hazard by prohibiting the conduct of business where motor vehicles are required or the assembling of motor vehicles in public garages or upon the streets of a city would soon turn our cities into deserted villages and seriously impair the values of city property. We consider the position of the city in the present case unreasonable and award a peremptory writ of *mandamus* for the issue of the permit for alterations to the building applied for by the relator.