The plaintiffs made application for a preliminary restraint. This matter comes on to be heard after notice to the defendants, the submission by them of answering affidavits, and argument.
There appears to be no dispute as to the material facts. The Director of Public Safety of the City of Newark has threatened to revoke the license of the Broad Street Theatre if it presents a motion picture film entitled "Mom and Dad." The license for the operation of the theatre is held by Rayhertz Amusement Corporation, a plaintiff, and the owner and exhibitor of the moving picture film is the plaintiff, Hygienic Productions, Inc. The proposed presentation and exhibition of the picture at the theatre is pursuant to a contract entered into between the plaintiffs.
On October 9, 1948, the plaintiffs, in accordance with practice and for the purpose of advertising the picture, held a preview to which were invited representatives of the City of Newark. The number of persons attending this performance is differently estimated, plaintiffs claiming that 140 persons attended while the defendants' affidavits give the number as 70.
I have read the affidavits submitted by the defendants. Beside the affidavit of defendant John B. Keenan, Commissioner of Public Safety, who did not attend the performance, there are eight affidavits of persons who did attend, five by women affiliated with various organizations, and the remaining three by officials of the Police Department — an acting policewoman, a Captain and a Lieutenant.
The plaintiffs submitted an affidavit, attached to which were photostatic copies of 281 letters from clergymen, educators, public officials, scout leaders and other persons who viewed the picture in other communities. Attached also to the affidavit were photostatic copies of 80 forms which were supplied to guests who attended the performance on October 9th, on which they had indicated their comments on the picture. In addition depositions of the defendant, John B. Keenan, were taken before me yesterday on notice by the plaintiffs. *Page 464 
The significant factor to be gleaned from the affidavits submitted by the defendants is that it is not charged that the film is immoral, or obscene; the sole basis for objection to the exhibition of the film is that it is being exhibited under commercial auspices. None of the affidavits goes so far as to say that the film should not be exhibited at all. Four of them state expressly, and four, inferentially, that the film should be shown under educational, medical or social welfare supervision. To quote from some of the affidavits of the defendants: — Mrs. Agnes Depperman, who is chairman of Plays and Films of a'Kempis of New Jersey, a women's organization, says "After the review of the facts, our committee recommends that the picture, as shown, and the lecture as published, should be conducted under the direct supervision of social, health and educational boards." Josephine Renz, who is an acting policewoman, says "On the whole, while the picture is represented as a picture of sex problems, to me it is certainly objectionable because of its presentation in a commercial way. It should only be handled by authorized boards of physicians or the like." Robert C. Lawrence, Captain in the Police Division, among whose duties are included the regulation of theatres and moving pictures, says "I viewed the picture and in my opinion it is a subject which should be controlled and regulated and not commercialized and put on the stage for the public, allowing people to come in for the price of admission, but I believe it should be under the control of a medical board or the Board of Education." Arthur A. Weller, Police Lieutenant, said "Upon viewing the picture, I determined that in parts it was educational, if shown in the proper places under proper supervision."
The affidavits and exhibits submitted by the plaintiffs contend that the picture is neither lewd, immoral nor indecent; that it has been shown to audiences in more than 4,000 theatres in more than 40 states; that it has been shown in more than 30 cities in the State of New Jersey; and that it is presently being exhibited in some other municipalities within the state. The letters, photostatic copies of which are attached to the affidavit, include letters of recommendation as to the educational *Page 465 
value of the picture, which deals with parental delinquency, and information concerning sex matters. It is alleged that the picture describes and illustrates the conception and delivery of a child at birth, both in a normal manner and by Caesarean operation, and it also depicts the ravages of social diseases.
It is not the province or function of the Court to censor motion pictures nor any accompanying lecture nor the auspices under which presented. If, as defendants argue, the presentation of the film would not be objectionable if conducted under non-commercial auspices, it is not within the power of the defendants to revoke a theatre license if the same film is shown under commercial auspices. The defendants' affidavits say that the picture should be exhibited under educational auspices. If it has educational value, such value exists whether or not it is shown under commercial auspices.
In the cases which have come to my attention, the Court had before it for consideration the revocation of licenses for exhibition of pictures deemed by the police commissioner to be immoral or indecent, which is not the situation here. In PublicWelfare Pictures Corp. v. Brennan, Commissioner of the City ofNewark, 100 N.J. Eq. 132, the late Vice-Chancellor Church in 1926, in determining that the defendant commissioner had no authority to revoke a permit for presentation of a film called "The Naked Truth" which the commissioner deemed to be immoral, made these observations which are pertinent here: "The board of censors thought it objectionable unless presented in a Y.M.C.A., in a school building or a church, — without charge. In passing, I may say I cannot see why a play objectionable in itself is made less so by allowing the public to see it in a church, and for nothing."
Since the film under consideration deals with social sex problems, the following remarks of Judge Augustus N. Hand speaking for the United States Circuit Court of Appeals in U.S.v. Dennett, 39 Fed. (2nd) 564, 76 A.L.R. 1092 are pertinent: "The old theory that information about sex matters should be left to chance has greatly changed and while there is still a difference of opinion as to just the kind of instruction *Page 466 
which ought to be given, it is commonly thought in these days that much was lacking in the old mystery and reticence. This is evident from the current literature on the subject, particularly such pamphlets as `Sex Education' issued by the Treasury Department, U.S. Public Health Service in 1927." In this case, the plaintiffs allege that the medical sequences in the film were procured from materials furnished by the U.S. Department of Health and filmed under the direction of public health officials.
We are dealing here with the threatened revocation of a license for the conduct of a legitimate business because of such proposed exhibition. The court has not viewed the film and does not make any comment on its merits or demerits, nor on its educational value, but disposes of the matter upon the facts presented and the law applicable.
I conclude that the Commissioner has no authority to interfere with the presentation of the film for the reasons urged. An order with a temporary restraint may be presented in accordance with these conclusions.