ADAMS THEATRE CO., A CORPORATION OF THE STATE
OF ILLINOIS, PLAINTIFF-RESPONDENT, v. JOHN B.
KEENAN, DIRECTOR OF PUBLIC SAFETY OF THE
CITY OF NEWARK, HARRY S. REICHENSTEIN, CITY
CLERK OF THE CITY OF NEWARK, AND THE CITY
OF NEWARK, A MUNICIPAL CORPORATION OF THE
STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued March 9, 1953—Decided April 27, 1953.

──────

*Mr. George B. Astley* argued the cause for appellants (*Mr. Charles Handler,* attorney).

*Mr. Robert L. Hood* argued the cause for respondent.

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. The question here is whether the trial court erred in entering a summary judgment directing Newark's director of public safety and city clerk to issue to plaintiff a license to operate a theater exhibiting burlesque shows. Defendants' appeal to the Appellate Division was certified by this court of its own motion.

The license was refused under a licensing ordinance prohibiting the operation of a theater for commercial stage or motion picture exhibitions except under license issued with the "approval" of the director of public safety. The ordinance also empowers the director to suspend or revoke an issued license. In either case the director's discretion is governed by the standard of what "may be necessary for the furtherance of decency and good order." That is the norm specified by the provisions related to the suspension or revocation of a license, but from the context of the entire ordinance that norm is plainly to be implied as applicable also to the director's "approval" of an application for a license in the first instance. *Cf. Librizzi v. Plunkett,* 126 *N. J. L.* 17 (*Sup. Ct.* 1940).

 The performance of a play or show, whether burlesque or other kind of theater, is a form of speech and *prima facie* expression protected by the State and Federal Constitutions, and thus only in exceptional cases subject to previous restraint by means of the withholding of a theater license or otherwise.

Any doubt raised by *Mutual Film Corporation v. Industrial Commission*, 236 *U. S.* 230, 35 *S. Ct.* 387, 59 *L. Ed.* 552 (1915), that First Amendment protection under the Federal Constitution extends to the commercial exhibition of plays, shows and motion pictures, was removed by the recently decided case of *Joseph Burstyn, Inc., v. Wilson*, 343 *U. S.* 495, 72 *S. Ct.* 777, 96 *L. Ed.* 1098 (1952).

The First Amendment has been interpreted particularly to bar previous restraints upon free expression, *Near v. State of Minnesota ex rel. Olson*, 283 *U. S.* 697, 51 *S. Ct.* 625, 75 *L. Ed.* 1357 (1931), including any attempted prior restraint by state or local authorities, *Gitlow v. People of State of New York*, 268 *U. S.* 652, 45 *S. Ct.* 625, 69 *L. Ed.* 1138 (1925) : *Near v. State of Minnesota ex rel Olson, supra; Joseph Burstyn, Inc., v. Wilson, supra.* The comparable provision of our State Constitution is to like effect. *Article I, paragraph* VI of the *Constitution of* 1947 provides, "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right."

However, "the protection even as to previous restraint is not absolutely unlimited," *Near v. State of Minnesota ex rel. Olson, supra*, 283 *U. S.*, at *page* 716, 51 *S. Ct.*, at *page* 631, 75 *L. Ed.*, at *page* 1367. There are "narrowly limited classes of speech" which are not given the protection of the First Amendment. *Chaplinsky v. State of New Hampshire*, 315 *U. S.* 568, 571, 62 *S. Ct.* 766, 86 *L. Ed.* 1031, 1035 (1942). By universal agreement one such exception is speech which is outrightly lewd and indecent.

But whether a particular play, show or motion picture is lewd and indecent more often is a controverted question than a matter upon which all will agree. The standard "lewd and indecent" is amorphous, frequently of different content according to the local standard of propriety at the time and place of exhibition. There is ever present, too, the danger that censorship upon that ground is merely the expression of the censor's own highly subjective view of morality unreasonably deviating from common notions of what is lewd and indecent, or may be a screen for reasons unrelated to

moral standards. The cases involving prior restraints upon the exhibition of plays, shows and motion pictures illustrate the widely varying concepts of lewdness and indecency held by different censors and even by courts. Does every reference to motherhood, birth or the sex relationship *ipso facto* classify the presentation as lewd and indecent? Does the presentation become such if the censor's view is that the subject matter or its treatment is not fit for commercial exhibition to patrons of places of public entertainment while suitable for present-ment before medical societies or under educational or social welfare auspices? Can the presentation be banned *in toto* as lewd and indecent because a part—even a minute part—is coarse, vulgar or profane? These and like questions have not always been answered the same way. See *Notes*, 60 *Yale Law Journal*, 696 (*April* 1951); 39 *Columbia Law Review*, 1383 (December 1939).

Our state decisions tend to adhere to the "dominant effect" test. *United States v. One Book Entitled Ulysses*, 72 *F. 2d* 705 (*C. C. A.* 2, 1934), affirming 5 *F. Supp.* 182 (*D. C. S. D. N. Y.*, 1933). By that test the mere fact that sexual life is the theme of the presentation or that the characters portray a seamy side of life and play coarse scenes or use some vulgar language does not constitute the presentation *per se* lewd and indecent. The question is whether the dominant note of the presentation is erotic allurement "tending to excite lustful and lecherous desire," dirt for dirt's sake only, smut and inartistic filth, with no evident purpose but "to counsel or invite to vice or voluptuousness." *People v. Wendling*, 258 *N. Y.* 451, 180 *N. E.* 169, 81 *A. L. R.* 799 (*Ct. App.* 1932). In such case, prior restraint upon the exhibition offends no constitutional right, if indeed censorship in the strict sense is involved at all; the exhibition then "is not theatre and in no wise involves free expression." *Bonserk Theatre Corp. v. Moss*, 34 *N. Y. S. 2d* 541, 547 (*Sup. Ct.* 1942). It is the absence of this dominant note in the motion pictures involved in *Public Welfare Pictures Corp. v. Brennan*, 100 *N. J. Eq.* 132 (*Ch.* 1926); *Hygienic Productions v. Keenan*, 1 *N. J. Super.* 461 (*Ch. Div.* 1948) and *American Museum of*

*Natural History v. Keenan,* 20 *N. J. Super.* 111 (*Ch. Div.* 1952), which underlies those holdings denying any power in the public officials to ban their commercial presentations.

The defendant director of public safety in his affidavit in this case, and counsel, on the brief and on the oral argument, suggest that these New Jersey decisions leave the director powerless to prevent the exhibition of a presentation actually lewd and indecent even by the suspension or revocation of a license after a history of the performance of such exhibitions. That is a mistaken view of the holdings of those cases. In the *Public Welfare Pictures Corp.* and *Hygienic Productions* cases the licensing officials themselves did not contend that the motion pictures were actually lewd and indecent but only that the theme of the story portrayed by each was such that the pictures should not be commercially exhibited but shown under religious, educational or welfare auspices. The decisions held that the officials had no power so to limit the presentations. In the *American Museum of Natural History* case the trial court viewed the film and found as a fact that "there is nothing suggestive, obscene, indecent, malicious or immoral in the showing of Latuko aborigines in their normal living state." We are aware of no reported case in our books which questions the power of a municipality to deal through licensing ordinances with a presentation the dominant note of which is outrightly lewd and indecent. And note also the criminal statutes, *N. J. S.* 2*A* :115–1 and 2. True, the power of censorship "is so abhorrent to our traditions that a purpose to grant it should not be easily inferred," *Hannegan v. Esquire, Inc.,* 327 *U. S.* 146, 151, 66 *S. Ct.* 456, 459, 90 *L. Ed.* 586, 589 (1946). And there is no statutory delegation to municipalities of censorship powers as such. However, *R. S.* 40 :52–1 authorizes municipalities to license and regulate "theatres, cinema and show houses," and *R. S.* 40 :48–1 (6) empowers them to adopt ordinances to "Prevent vice, drunkenness and immorality." Therefore, provided the ordinance sets forth a standard adequate for the purpose, 7 *McQuillin, Municipal Corporations* (*3rd ed.*), *sec.* 24.199, *p.* 17, these sections

together amply suffice as a grant of power through licensing to cope with the problem of the exhibition of plays, shows and motion pictures, the dominant note of which is clearly the purveying merely of dirt for dirt's sake. The standard of "decency and good order" in the Newark ordinance is a sufficient norm in the statutory category of vice and immorality. See *Block v. City of Chicago*, 239 *Ill.* 251, 87 *N. E.* 1011 (*Sup. Ct.* 1909).

In the instant case the attempt by the defendant director was to impose a previous restraint by the refusal of the theater license. No burlesque show has been staged in Newark by the plaintiff as a consequence. The prior restraint is therefore plainly insupportable unless the proofs which led the licensing official to conclude that plaintiff intends to stage lewd and indecent shows reasonably tend to show that such is the case. *Cf. Bonserk Theatre Corp. v. Moss, supra.* The applicant denied a license or the licensee whose license is suspended or revoked may, of course, have judicial review of the action of the licensing official, ordinarily, as in this case, by a proceeding in lieu of prerogative writ under *Rule* 3:81.

Although the court will assume that the action of the official was actuated by proper motives and for valid reasons, *Aschenbach v. Inhabitants of City of Plainfield*, 121 *N. J. L.* 598 (*Sup. Ct.* 1939), affirmed on opinion below, 123 *N. J. L.* 265 (*E. & A.* 1939), a judgment setting the action aside and peremptorily ordering the theater license to issue ·or to be restored will be entered if it appears that the action was without reasonable basis, that is, that it was arbitrary. *Cf. De Roos v. Chapman*, 106 *N. J. L.* 6 (*Sup. Ct.* 1929); *Hudson Royal, etc., Inc., v. Mayor, etc., Jersey City*, 10 *N. J. Misc.* 629 (*Sup. Ct.* 1932); *Phillips v. Borough of East Paterson*, 134 *N. J. L.* 161 (*Sup. Ct.* 1946), affirmed on opinion below, 135 *N. J. L.* 203 (*E. & A.* 1947); *Mangiello v. Mayor, etc., Jersey City*, 6 *N. J. Misc.* 536 (*Sup. Ct.* 1928); *Bonserk Theatre Corp. v. Moss, supra*; 9 *McQuillin, supra, sec.* 26.74, *p.* 162. And necessarily, after the decision in the *Burstyn* case, the validity of the reasons for the refusal

must now be assayed by the court in the light of the constitutionally guaranteed right of freedom of expression.

Plaintiff's application stated merely that it intended to stage "burlesque" shows. "Burlesque" today is descriptive of two very different kinds of show. Legitimate burlesque, and once the only kind, is clean and wholesome entertainment defined in the 1952 edition of *Webster's New International Dictionary* as

"a type of theatrical entertainment, developed in the United States in the late nineteenth century, characterized by broad humor and slapstick presentation, at first consisting of a musical travesty, but later of turns, as songs, ballet dancing, and caricatures of well-known actors and plays."

In contrast, that which has been termed "modern burlesque" has been described as

"a plotless musical entertainment consisting of a series of unrelated episodes and dances, all with the purpose of depicting or suggesting sexual subjects or objects. The one outstanding characteristic of modern burlesque is the fact that it is completely sex-centered. It has some low comedy and occasionally some humor, but the principal subject of both is sex. * * * The *piece de resistance* is the girl who disrobes, partially or entirely, and this act varies with the political season and the locality. * * * If burlesque of today is metropolitan, so also it is vice, and needs to be thought of in that light, as an aspect of social pathology. If vice implies a sense of antagonism toward existing mores, a purveying of sex in a vicarious, professional and promiscuous fashion, then burlesque is just that. * * * Although the operator may not be willing to say so to an inquirer, usually adopting a sanctimonious air, he knows, and everything in his theatre indicates he knows, that he is giving a sex show, sans excuses, sans philosophy and above all, sans clothes. He is, in that sense a professional purveyor of sex." *Dressler, Burlesque as a Cultural Phenomenon* (1937).

A burlesque show answering the latter description may well be considered outrightly lewd and indecent. We must assume that it is that type of show which the director inferred plaintiff planned to exhibit if granted a license. We agree with the trial court that the inference is not supported by the reasons therefor relied upon by the director and set forth in his affidavit. The director's action was not taken upon

proofs after hearing because he did not afford the plaintiff an opportunity to be heard. His affidavit states he made his decision upon the basis of his knowledge from complaints of interested citizens that the only burlesque theater presently licensed in Newark exhibits the offensive type of burlesque show, and also from information obtained by him from police sources in other cities satisfying him that two of plaintiff's officers were men of dubious character and that one of them has in the past staged lewd and indecent exhibitions in other cities.

The alleged conduct of the present licensee in staging indecent burlesque shows certainly can in no wise be the basis for an inference that plaintiff, who has no connection of any kind with that licensee, will do likewise. It is this present licensee whose license the director mistakenly supposed he was without power to suspend or revoke even if its burlesque shows should be established to be lewd and indecent. It was apparently the possible existence of the same supposed difficulty if plaintiff should be granted a license that the director sought to circumvent by the anticipatory denial of the license in issue. In any event, that denial upon the mere conjecture that the action was necessary to bar an "additional burlesque show" of the offensive sort cannot be sustained.

The trial court rejected as insubstantial because "solely hearsay" the information which the director viewed as establishing the questionable character of two of plaintiff's officers and that one of them from time to time had staged indecent performances in other places. The hearsay character of the information gathered by a licensing official in the performance of his duty does not necessarily invalidate the information as a basis for administrative action. *Davis, Administrative Law* (1951), *sec.* 143. But in our view the information relied upon by the director, in this case, if true, does not support the conclusion drawn from it. That one of the officers was victimized by extortioners while operating a Chicago theater and did not reveal the full story when first interrogated by federal investigators, and that many years

ago he was friendly with the brother of a notorious racketeer, if reflecting at all upon his character, suggest nothing as to the type of burlesque show plaintiff will exhibit. And the information that the other officer has staged indecent exhibitions in other cities is so fragmentary and the officer's alleged connection with the theaters involved so inconclusively shown that, having in view the constitutional protection accorded to speech and that speech is to be presumed to be protected speech and that the presumption is not the other way, such information cannot reasonably be viewed as establishing that plaintiff corporation will be guided by a person who persistently causes or permits the exhibition of lewd and indecent performances. *Cf. Bonserk Theatre Corp. v. Moss, supra.*

Without reference, then, to plaintiff's affidavits on the motion, the arbitrary nature of the refusal of the license plainly appears and the trial court properly entered judgment peremptorily ordering the issuance of the license. However, what appears in plaintiff's affidavits may appropriately be noted. Not only do the affidavits of the mentioned officers of the plaintiff deny or meet the derogatory information as to them relied upon by the director, but the officers expressly disclaim any intention to stage burlesque "with the colloquial meaning it has acquired in some areas," and avow an intention to stage "burlesque in the theatrical and dictionary sense." Furthermore, there is an affidavit of the National Administrative Secretary of the American Guild of Variety Artists, according to which that organization is made up of entertainers from every part of the United States whose "recognized principle and objective" is "that none of its members shall appear in or lend their names to lewd, indecent or illegal performances or shows" and who "would like to see a revival of the burlesque show" in its original concept offering both clean entertainment and, as in the past, a "training ground for the development of comedians and variety stars." The affidavit mentions members of the Guild whose names and faces are known in virtually every household in the land. Guild members perform at a Chicago

theater now and for some time operated by plaintiff's officers, who, the affidavit attests, "all are legitimate producers and exhibitors of good standing, recognized as persons from whom members of our Guild may accept employment without damage to their name or reputation."

Comment is appropriate also upon the director's failure to give plaintiff a hearing prior to his determination. In the absence of a requirement by statute or ordinance, it has been held that a hearing before the license is denied is not essential to due process. *Thayer Amusement Co. v. Moulton*, 63 *R. I.* 182, 7 *A.* 2*d* 682, 124 *A. L. R.* 236 (*Sup. Ct.* 1939) ; 33 *Am. Jur., Licenses, p.* 379. Due process may be satisfied when the applicant has the opportunity to learn and test out the basis of the action upon judicial review, *cf. State, ex rel. State Board of Milk Control v. Newark Milk Company*, 118 *N. J. Eq.* 504 (*E. & A.* 1935). The Newark ordinance provides for notice and hearing before suspension or revocation of a license, but not in the case of its issuance. However, apart from due process considerations, the practical benefits to be realized from a hearing suggest the desirability of affording one to the applicant in these cases. It is not alone that in simple fairness plaintiff's officers might well have been given an opportunity to know why the license was being refused and the chance to refute the information relied on as impugning their characters and intentions. There is also the interplay of the constitutional protection accorded freedom of expression taking the form of plays, shows and motion pictures which raises questions which should lead the licensing official to desire firm support in the way of proof before arriving at a finding that a proposed exhibition will be actually lewd and indecent. Equally desirable is the practice that the official report his findings based on the proofs. Such a practice would not only be useful to litigants and the court on review, but would inform the public upon just what the action is based. *Cf. Family Finance Corp. v. Gough*, 10 *N. J. Super.* 13 (*App. Div.* 1950) ; *Note* 39, *Columbia Law Review, supra, p.* 1401. We note with interest that, since the taking of the action chal-

lenged in this proceeding, the defendant director of public safety has adopted rules and regulations providing that the director may give the applicant a prior hearing in any case in which he thinks one may be warranted, and that in that event he will "temporarily refuse the application," give the applicant "five days' notice of the time and place of such hearing" and make his determination whether to issue the license from the evidence "taken at the hearing." If the ordinance is not to be amended to assure a hearing, this is at least a desirable procedural improvement by administrative action.

Affirmed.

WACHENFELD, J. (dissenting). The trial court concluded the director of public safety acted arbitrarily and abused his discretion in refusing the application because the affidavits relied upon referred solely to hearsay evidence, and therefore found against him.

This court, however, decides in the majority opinion:

> "The hearsay character of the information gathered by a licensing official in the performance of his duty does not necessarily invalidate the information as a basis for administrative action."

I subscribe to this determination and must therefore conclude the trial court committed error in deciding as it did.

I am not in accord with the conclusion of the majority, however, as the Legislature in this instance gave the city the right to adopt an ordinance regulating the subject matter and the city, in turn, placed the administration of such matters in the hands of the License Bureau in the department of the director of public safety, giving him full power to consider the applications for a license and to determine the qualification of the applicants.

There would impliedly be a duty on him to withhold such license with respect to such activities which inherently or potentially would detrimentally affect the public welfare, health and safety of the city. If the licensing authority cannot examine into the character of the applicant to be

licensed, then the system affords little regulation or protection to the municipality involved.

The test is whether or not there has been a reasonably *bona fide* exercise of the discretion granted by the legislative authority, as distinguished from fraud or arbitrary action. There is a presumption of proper motive and valid reasons underlying the directive of the appellant, and we are not obliged to consider the evidence upon the technical rules which would be applicable to the exclusion of evidence in jury trials. *Cf. Federal Communications Comm. v. Pottsville Broadcasting Co.*, 309 *U. S.* 134, 60 *S. Ct.* 437, 84 *L. Ed.* 656 (1940).

In *Bonserk Theatre Corp. v. Moss*, 34 *N. Y. S.* 2d 541 (*Sup. Ct.* 1942), the court held the issuing authority did not abuse its discretion in refusing the license of a burlesque show on the ground that persons through whom the corporation operated had in the past persisted in causing or permitting the production of shows which had been preponderantly offensive to public morals and decency, and that the individuals on other occasions had failed to keep their promises that their burlesque shows would be conducted decently.

Basing the appellant's actions upon the standards so pronounced, I think there is ample in the record to indicate that decency and good order would require the action taken and his decision is sufficiently supported by the record. The character and past conduct of the applicant and its officers, and especially their past exhibitions, reveal conflict with the law and successful criminal prosecutions against them because of the character of the shows which they exhibited and conducted.

I think the director of public safety was justified in his denial of the application and I would reverse the judgment below and sustain the appellant.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice WACHENFELD—1.