29 N.J. Super. 462 (1954)
102 A.2d 774
D.B.M. AMUSEMENT CORPORATION, PLAINTIFF-APPELLANT,
v.
HARRY J. THOUROT, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 4, 1954.
Decided February 5, 1954.
*464 Before Judges JAYNE, FRANCIS and CLAPP.
Mr. Walter D. Van Riper argued the cause for plaintiff-appellant (Messrs. Van Riper & Belmont, attorneys).
Mr. Cyril J. McCauley argued the cause for defendants-respondents.
The opinion of the court was delivered by CLAPP, J.A.D.
The Board of Commissioners of Union City refused to issue to plaintiff a license for the putting on, apparently, of burlesque shows at its theatre there. Plaintiff then, by this action in lieu of prerogative writ, sought to compel its issuance. Judgment was for defendants, and plaintiff appeals.
Defendants' counsel asserted before the court below, that the license had been denied, first, because of conduct of Harry W. Doniger, the president of the plaintiff corporation, demonstrating its unfitness to hold the license; second, because the theatre is next to a playground; and third, because it is a fire hazard and violates municipal building and health codes.
The proofs as to the first of these three matters disclose Doniger to have been the operator of another corporation that had shown in this theatre two allegedly objectionable movies. One of them, called "Mom and Dad," which had not been stopped by the authorities, had run for a period of seven weeks in 1948, and the other, called "Because of Eve" (shown separately to men and women), which had been stopped by the police on the ground of lewdness, had run for one day in 1950. According to the police captain, the two pictures were of "the same significance * * * to my official knowledge." When action was brought by the corporation to restrain the city from interfering with the presentation of the latter picture, the Superior Court, striking *465 much of the testimony as hearsay, denied the restraint. However, in an action as to the other picture, between other parties, another judge of that court came to a contrary result. Hygienic Productions v. Keenan, 1 N.J. Super. 461 (Ch. Div. 1948). The film was held in the latter case not to be immoral or obscene  that is, see Adams Theatre Co. v. Keenan, 12 N.J. 267, 272 (1953); cf. Bantam Books, Inc. v. Melko, 25 N.J. Super. 292, 310-319 (Ch. Div. 1953)  not one in which the dominant note was
"erotic allurement `tending to excite lustful and lecherous desire,' dirt for dirt's sake only, smut and inartistic filth, with no evident purpose but `to counsel or invite to vice or voluptuousness.'"
Before evaluating these proofs, we should look first at the authority of the board. By ordinance, the board is empowered to revoke a license "in the interest of * * * the preservation and enhancement of * * * morality * * * of the people of the City of Union City." See R.S. 40:48-1 (6) speaking of "immorality." The parties not having dealt with the validity of this standard, we shall not do so either. However see Superior Films v. Department of Education, 74 S.Ct. 286 (1954), reversing Commercial Pictures Corporation v. Board of Regents, 305 N.Y. 336, 113 N.E.2d 502, 507 (Ct. App. 1953), where the statutory standard was "`immoral' or * * * will tend to corrupt morals." We shall assume that this standard, which deals with the revocation of a license, is not only valid, but is applicable also to the issuance of a license. Cf. Adams Theatre Co. v. Keenan, 12 N.J. 267, 270, 273 (1953), supra.
The charge that plaintiff is unfit to be licensed, is predicated entirely upon the showing of these two allegedly lewd movies; and the implication, that goes with the charge, is that these movies demonstrate an intention to exhibit burlesque also of a lewd sort. As held in Adams Theatre Co. v. Keenan, supra, a refusal to grant a license on this score is plainly insupportable unless the proofs reasonably tend to show that such in fact was his intention. Upon this matter, Doniger's conduct in the past is evidentiary. *466 Bonserk Theatre Corporation v. Moss, 34 N.Y.S.2d 541 (Sup. Ct. 1942); Committee for Industrial Organization v. Hague, 25 F. Supp. 127, 148 (D.C.N.J. 1938), and cases and articles cited, modified 101 F.2d 774 (C.C.A. 3 1939), affirmed 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); 53 C.J.S., Licenses, § 38, p. 635.
He had shown movies in this theatre for 13 years, apparently without any stigma, except from these two pictures. One, it may be noted, appeared three years before the present application, and the other, five years before. It is even more noteworthy that apparently no attempt was made to revoke the license of the movie corporation because of these pictures. As said in Adams Theatre Co. v. Keenan, supra:
"* * * having in view the constitutional protection accorded to speech and that speech is to be presumed to be protected speech and that the presumption is not the other way, such information cannot reasonably be viewed as establishing that plaintiff corporation will be guided by a person who persistently causes or permits the exhibition of lewd and indecent performances."
Even if it could be said that the dominant note of these movies was one of lewdness under the test laid down in the Adams Theatre case, nevertheless there is no proof of such persistency on Doniger's part as to establish an intention by him now to exhibit lewd burlesque.
The second ground given for refusing the license is that the theatre is next to a playground, which at the time of the hearing before the board was apparently established, but not yet officially opened. Defendants' brief makes the point, but does not discuss it, leaving us to our conjectures. The matter of billboards occurs to us, those of an offensive sort that might be placed along the sidewalks, with children about, in their early teens, attending the playground. But nothing is said as to billboards in the testimony or the briefs; nor is there proof or even a suggestion as to what manner of billboard will be found adjacent to the theatre. The point is too inadequately treated.
*467 The final matter has to do with four objections as to the condition of the premises (the testimony established that the drinking fountain was disconnected, thus eliminating the objection as to it): the failure to paint the wood under the theatre's seats, a violation of the health code; the filthiness of the carpet, another violation thereof; a dressing room under the stage, a violation of the building code; and a trap door leading to the street from under the stage, a fire hazard.
Apparently the court below thought that the issues over the carpeting and the painting were out of the case, because it, in its opinion, speaks of but a single violation, namely, the room under the stage. At any event, the plaintiff had contracted to put in new carpeting and to make other improvements at an expense of $6,000, but did not wish to do so if the license were to be refused. As to the room under the stage, the opinion states that it had been stipulated in court that its partitions would be torn down and it would not be used as a dressing or storage room.
That leaves only the matter of the trap door. The ground of the objection here is that people in the above-mentioned room or the lavatories under the stage might have to use this door in case of fire. Since the room is to go, this objection because of it will go too. As for the people in the lavatories under the stage, they have the use of exits only three feet from the lavatories, considerably nearer than the trap door.
In general, in an action such as this, the right which the plaintiff seeks to enforce must have vested in him at the commencement of the action or at any event at the time the court issues its command. Silverthorne v. Warren Railroad Co., 33 N.J.L. 372 (Sup. Ct. 1869); Connolly v. Smith, 86 N.J.L. 466 (Sup. Ct. 1914). That right, we find, was and is vested in the plaintiff here at these times, if it had, pursuant to its stipulation, attended to the three matters mentioned (that is, with respect to the paint, the carpet and the room) to the satisfaction of the city. So the question is whether the command of the court may issue now, conditional, however, upon action yet to be undertaken by one *468 of the parties. State ex rel. James v. Rapport, 136 Conn. 177, 69 A.2d 645 (Sup. Ct. Err. 1949); Roberts v. U.S. ex rel. Valentine, 13 App. D. 38 (Ct. App. D.C. 1898), affirmed on other grounds 176 U.S. 221, 20 S.Ct. 376, 44 L.Ed. 443 (1899). Or must the plaintiff, prior to the determination of the board, have performed all conditions entitling it to relief?
Here the board has three times denied the application for a license, besides having been successful in another action in court a year ago over the matter. Plaintiff has expended $27,000 in improvements to the building in an endeavor to meet the city's requirements, but it is reluctant to put in an additional $6,000 for carpeting and other items contracted for, without assurance that further objections will not be interposed. Under the circumstances and in view of the fact that it would be comparatively simple to satisfy the city as to the three matters mentioned, we think the directions of the court may be made upon a conditional basis. We do not pass generally upon the right to conditional relief in such matters as these.
Accordingly, we direct the license to issue to the plaintiff, upon its reasonably satisfying the appropriate authority of the city that the filthy carpeting is removed, the wood under the seats is painted, and the partitions of the above-mentioned room are torn down.
Reversed.