ADAMS NEWARK THEATRE CO., A CORPORATION, PLAIN-
TIFF-RESPONDENT, v. CITY OF NEWARK, *ET AL.*,
DEFENDANTS-APPELLANTS.

I. HIRST ENTERPRISES, INC., A CORPORATION, PLAIN-
TIFF-RESPONDENT, v. CITY OF NEWARK, *ET AL.*, DE-
FENDANTS-APPELLANTS.

Argued October 15, 1956—Decided November 5, 1956.

*Mr. Jacob M. Goldberg* argued the cause for the appellants (*Mr. Vincent P. Torppey,* attorney, *Mr. Joseph A. Ward,* on the brief).

*Mr. Robert L. Hood* argued the cause for the respondent Adams Newark Theatre Co.

*Mr. Henry H. Rubenson* argued the cause for the respondent I. Hirst Enterprises, Inc. (*Mr. Leo J. Berg,* attorney).

The opinion of the court was delivered by

WACHENFELD, J. The respondents are the operators of a theater in the City of Newark and taxpayers in the municipality. They filed a complaint in lieu of prerogative writ wherein they sought to have a judicial determination of the legality of certain amendatory provisions of two ordinances adopted by the City of Newark on December 21, 1955, intended to become effective January 11, 1956. They contended the ordinances violated the state and federal constitutional provisions guaranteeing freedom of speech.

The cause came on for hearing by way of cross-motions for summary judgment on the pleadings and filed affidavits. There was no testimony or evidence. Summary judgment for the respondents was entered invalidating the questioned ordinances, and this appeal is from the judgment so rendered.

The two ordinances are, in fact, amendatory ordinances in that one repeats in full an ordinance regulating shows and exhibitions and the other repeats in full an ordinance commonly known as the "Disorderly Persons Ordinance." In addition to repeating the prior ordinances in full as above

stated, the amendatory ordinances add certain new restrictions which to all intents and purposes are similar in both ordinances, except the language of the two amendatory sections differs only slightly grammatically in an endeavor to fit the intended prohibitions into their respective categories.

They penalize the performer who violates the standards of the Disorderly Persons Ordinance and the entrepreneur who promotes such performance. The original ordinances, in general terms, condemned lewdness, obscenity or indecency on the part of the actor or the show, but the amendments specifically place certain conduct within these prohibited classifications.

Since the language of the amendatory ordinances is materially identical, it becomes necessary to quote the new provisions of only one:

"The removal by a female performer in the presence of the audience of her clothing, so as to make nude, or give the illusion of nudeness, of the lower abdomen, genital organs, buttocks or breasts;

The exposure by a female performer in the presence of the audience, or the giving of the illusion of nudeness in the presence of the audience, of the lower abdomen, genital organs, buttocks or breasts;

The exposure by a male performer in the presence of the audience of the genital organs or buttocks;

The use by a performer of profane, lewd, lascivious, indecent or disgusting language;

The performance of any dance, episode, or musical entertainment, the purpose of which is to direct the attention of the spectator to the breasts, buttocks or genital organs of the performer."

Recent decisions make it plain that the presentation of moving pictures and stage shows definitely comes within the protective ambit of constitutional free speech. *Joseph Burstyn, Inc., v. Wilson,* 343 *U. S.* 495, 72 *S. Ct.* 777, 96 *L. Ed.* 1098 (1952); *Adams Theatre Co. v. Keenan,* 12 *N. J.* 267 (1953). While this liberty is extensive and is usually ardently defended by the courts, it is by no means absolute. Inroads and restrictions are permitted under the aegis of the police power of the states, which may be delegated to subordinate governmental bodies. In New Jersey, municipalities are granted such regulatory power in the

interest of preservation of public morality by *R. S.* 40:48–1(6), 40:52–1 and 40:48–2.

Thus, the primary issue here is whether the municipality properly curtailed freedom of speech within the latitude allowed to the police power by the Federal Constitution, First Amendment, and Article I, paragraph 6, of the State Constitution.

The scope of permissible limitation of speech is generally confined to proscribing what is "lewd, obscene or indecent." See *Burstyn, supra.* This comports with the terms of the original ordinances. But the words quoted are essentially meaningless and insubstantial unless reference is made to the manner in which the judiciary has defined them.

On the federal scene as well as in our own jurisdiction, the predominant approach has been to survey the questioned exhibition or performance as a whole before determining whether its display or circulation would be so offensive to the well-being of the community as to permit prohibition.

In the *Adams* case, *supra,* we held:

"Our state decisions tend to adhere to the 'dominant effect' test. *United States v. One Book Entitled 'Ulysses'*, 72 *F.* 2d 705 (*C. C. A.* 2, 1934), affirming 5 *F. Supp.* 182 (*D. C. S. D. N. Y.*, 1933). By that test the mere fact that sexual life is the theme of the presentation or that the characters portray a seamy side of life and play coarse scenes or use some vulgar language does not constitute the presentation *per se* lewd and indecent. The question is whether the dominant note of the presentation is erotic allurement 'tending to excite lustful and lecherous desire,' dirt for dirt's sake only, smut and inartistic filth, with no evident purpose but 'to counsel or invite to vice or voluptuousness.' *People v. Wendling,* 258 *N. Y.* 451, 180 *N. E.* 169, 81 *A. L. R.* 799 (*Ct. App.* 1932). In such case, prior restraint upon the exhibition offends no constitutional right, if indeed censorship in the strict sense is involved at all; the exhibition then 'is not theatre and in no wise involves free expression.' *Bonserk Theatre Corp. v. Moss,* 34 *N. Y. S.* 2d 541, 547 (*Sup. Ct.* 1942). It is the absence of this dominant note in the motion pictures involved in *Public Welfare Pictures Corp. v. Brennan,* 100 *N. J. Eq.* 132 (*Ch.* 1926); *Hygienic Productions v. Keenan,* 1 *N. J. Super.* 461 (*Ch. Div.* 1948), and *American Museum of Natural History v. Keenan,* 20 *N. J. Super.* 111 (*Ch. Div.* 1952), which underlies those holdings denying any power in the public officials to ban their commercial presentations."

Relying largely on the *Burstyn* case, *supra*, and terming the *Adams-Keenan* case its counterpart, the respondents assert neither the legislative nor the police powers can be exercised in the enforcement of the enactments as presently written. These cases, they say, "clearly espouse the principle that the dominant effect of a presentation must be lewd, indecent or obscene and that attempted pre-censorship of specific acts prior to their performance, without regard to the circumstances of their presentation, offends against the constitutional right."

The court below, citing the language of the ordinance, determined:

"* * * it utterly disregards the established rule to the effect that the acts specified may be prohibited only when the dominant note of the presentation is erotic allurement, and the same is equally true of the prohibition of any dance, episode or musical entertainment which depicts sexual subjects. For this reason, if for no other, the plaintiffs' motion for summary judgment should be granted."

In substance, it inconsistently holds that "lewd, obscene or indecent" is sufficient and constitutional, while setting out the specific acts prohibited *ipso facto* makes the ordinance offensive and unconstitutional.

The municipality is thus faced with a constant dilemma. If it employs broad language, such as "lewd, obscene or indecent," the defense contends the accusation is so vague and general as not to apprise the defendants of the particular case to be met. While, if the information which would undoubtedly be demanded under those circumstances is put into the ordinance itself for clarification, it is said to become a trespass upon the constitutional protection of free speech.

The law is well settled that where the provisions of an ordinance are separable, the invalidity of one of the separable parts will not invalidate the entire ordinance. *Scharf v. Recorder's Court of Ramsey*, 137 *N. J. L.* 231 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 59 (1948); *City of Elizabeth v. Windsor-5th Ave.*, 31 *N. J. Super.* 187 (*App. Div.* 1954); *Blake v. Pleasantville*, 87 *N. J. L.* 426 (*Sup. Ct.* 1915);

*Schwarz Bros. Co. v. Bd. of Health,* 84 *N. J. L.* 735 (*E. & A.* 1913).

■ Thus, even though some of the enumerated behavior prohibited by the act be determined not subject to censorship, still by any interpretation of the record it must be admitted beyond the realm of debate that the large majority of the acts prohibited are obviously condemnable, being violently contrary to good morals and decency. If there be questionable acts contained within the ordinance, the whole ordinance should not be invalidated, including both the good and the bad provisions.

Individual transgressions alleged to come within the purview of the ordinance will be tested and weighed in accord with the law when the occasion for the prosecution arises. The respondents will have their full day in court, and if they are trespassed against, the right to appeal will still be available.

■■ Government under our form of democracy has the responsibility of protecting the morals of its people. The obligation is basic and undisputed. There is also a well-settled rule of construction that where there are two possible interpretations of a statute or ordinance, by one of which the law would be unconstitutional and by the other it would be valid, a court should adopt the construction which will uphold the law. *New American Library of World Literature v. Allen,* 114 *F. Supp.* 823, 830 (*D. C. N. D. Ohio* 1953).

This rule finds further support in our own Constitution, which directs that the provisions of the Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor. *Art.* IV, *Sec.* VII, *par.* 11.

These ordinances do not attempt to impose the "moral code of saints" prohibited in *Commercial Pictures Corp. v. Board of Regents, etc.,* 305 *N. Y.* 336, 113 *N. E.* 2d 502 (1953). On the contrary, the average person of a normally wholesome and healthy mind knows full well the import of

the words used and little difficulty should be encountered in intelligently applying the test laid down when the issue arises.

Nor do we think there is such magic in the phrase "erotic allurement" so that by itself it endows the statute with a cloak of constitutionality when used and at the same time automatically constitutes a trespass on the constitutional guarantees if the identical phrase is not employed in the enactment under inspection.

The respondents' lament that libraries, art galleries and museums will be invaded under the proposed ordinances is hardly realistic.

█ The trial court also held that the phrase "illusion of nudeness" was so nebulous as not to furnish a fair criterion to theatrical producers as to what is or what is not the illusion of nudeness.

We are not in accord with this conclusion. The act proscribed by the local ordinance must be considered in the light of the attending circumstances and the problem presented.

" 'Scholastic strictness of definition cannot be adopted if it prevents' a 'reasonable construction.' * * * Exceptions are implied to give effect to the general legislative intent shown by the context; they may arise by the law of reason, though not expressly mentioned." *Wright v. Vogt*, 7 *N. J.* 1 (1951).

"Illusion of nudeness" may not have the exactness of a mathematical formula, but when interpreted with reason and good judgment, which we are directed by the adjudications to do, there is developed a prohibition sufficiently precise and clear to permit intelligent understanding and enforcement. A contrary concept would impose an arbitrary pattern alien to decisional law.

█ Police power exercised in the public good will not ordinarily be limited.

"It may be said in a general way that the police power extends to all the great public needs. * * * It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare. * * *" *Noble State Bank v. Haskell*, 219 *U. S.* 104, 31 *S. Ct.* 186, 188, 55 *L. Ed.* 112 (1911).

And again:

"\* \* \* The Due Process Clause was not designed to interfere with the police power of the State to prescribe regulations calculated to promote the health, morals, and good order of the people." *Grillo v. State,* 120 *A. 2d* 384, 388 (*Md. Ct. App.* 1956).

Or as was said in *Fenske Bros. v. Upholsterers' International Union,* 358 *Ill.* 239, 193 *N. E.* 112, 117, 97 *A. L. R.* 1318 (1934), *certiorari* denied 295 *U. S.* 734, 55 *S. Ct.* 645, 79 *L. Ed.* 1682 (1935):

"\* \* \* In the exercise of this power, the Legislature may enact laws regulating, restraining, or prohibiting anything harmful to the welfare of the people, even though such regulation, restraint, or prohibition interferes with the liberty or property of an individual. Neither the Fourteenth Amendment to the Federal Constitution nor any provision of the Constitution of this state was designed to interfere with the police power to enact and enforce laws for the protection of the health, peace, morals, or general welfare of the people."

The ordinances in question come well within this design. They were promulgated to prevent moral contamination which the municipality feared was imminent. In substance, they contribute to the general moral welfare of its citizens and should not be declared invalid.

The judgment below is reversed and set aside and judgment is hereby entered for the appellants against the respondents dismissing the action.

JACOBS, J. (concurring). A theatrical performance which is lewd, obscene or indecent is prohibited by state law and may properly be made the subject of a penal ordinance. *N. J. S. 2A* :115–1 *et seq.; R. S.* 40 :48–1 (6) ; *R. S.* 40 :48–2 ; *R. S.* 40 :52–1; *Adams Theatre Co. v. Keenan,* 12 *N. J.* 267, 273 (1953). The standard, though general, is commonly used and is said to satisfy constitutional requirements. See *Adams Theatre Co. v. Keenan, supra; State v. Weitershausen,* 11 *N. J. Super.* 487, 491 (*App. Div.* 1951), certification denied 7 *N. J.* 79 (1951) ; *Bantam Books, Inc. v. Melko,* 25 *N. J.*

*Super.* 292, 302 (*Ch. Div.* 1953), modified 14 *N. J.* 524 (1954); *Spring, Risks & Rights in Publishing, Television, Radio, Motion Pictures, Advertising and the Theater* 261 (1952); *Obscenity and the Arts,* 20 *Law & Contemp. Prob.* 531 *et seq.* (1955). In the *Adams* case this court, in an opinion by Justice Brennan, adopted the now prevailing view that the determination of whether a theatrical performance is lewd, obscene or indecent must rest on its dominant effect which is to be gathered, not from isolated excerpts withdrawn from their setting, but from a viewing and consideration of its entirety. *Cf. Public Welfare Pictures Corp. v. Brennan,* 100 *N. J. Eq.* 132 (*Ch.* 1926); *Hygienic Productions v. Keenan,* 1 *N. J. Super.* 461 (*Ch. Div.* 1948); *American Museum of National History v. Keenan,* 20 *N. J. Super.* 111 (*Ch. Div.* 1952). The struggle to attain that much freedom of expression has been long and hard and I do not understand that the majority would retrace any of the course followed. See *Bantam Books, Inc. v. Melko, supra.*

The plaintiffs urge that a literal reading of the ordinances indicates an intent to depart from the governing principle of the *Adams* case. On the other hand the city's brief and oral argument on appeal seem to suggest that its ordinances may properly be construed and sustained to the extent that they prohibit lewd, indecent and obscene conduct, and the majority opinion appears to defer the crucial determination until a later date. Thus it points out that "individual transgressions alleged to come within the purview of the ordinance will be tested and weighed in accord with the law when the occasion for the prosecution arises." On the assumption that a defendant will then be entitled to prevail if the conduct, viewed in the light of the dominant note of the entire performance, is not lewd, obscene or indecent, I concur in the judgment of reversal. While this may place a defendant in jeopardy of an adverse determination, his position will not differ significantly from that of others who are prosecuted under criminal statutes embodying equally general standards which have been held to be constitutionally sufficient. See Holmes, J., in *Nash v. United States,* 229 *U. S.*

373, 377, 33 *S. Ct.* 780, 57 *L. Ed.* 1232, 1235 (1913) : "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." But *cf. Thornhill v. State of Alabama*, 310 *U. S.* 88, 60 *S. Ct.* 736, 84 *L. Ed.* 1093 (1940) ; *Winters v. New York*, 333 *U. S.* 507, 68 *S. Ct.* 665, 92 *L. Ed.* 840 (1948).

JACOBS, J., concurring in result.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING and JACOBS—5.

*For affirmance*—None.